<hr />

[No. 4571.]

THE FULTON IRRIGATION DITCH COMPANY ET AL. v.
THE MEADOW ISLAND IRRIGATION COMPANY.

1. **Appellate Practice—Findings—Conclusiveness.**

On appeal, the court is concluded by a finding of the trial court on conflicting evidence.

2. **Water Rights—Changing Point of Diversion—Vested Rights.**

On an application by a ditch company to change the point of diversion of a water priority, the company has the right to apply such diversion to a larger or smaller acreage as it may see fit, the only limitation being that it shall not divert a larger quantity of water, measured either by volume or time, than the priority entitles.

3. **Same—Changing Point of Diversion—Application of Water.**

On an application by a ditch company to change the point of diversion of a water priority, the mere fact that it is the intention of the company to apply the water diverted from its original headgate into the new headgate and new ditch upon a larger acreage, does not even presumptively establish that more water,

measured either in time or quantity, will be used than was diverted through the original headgate, nor will it presumptively establish injury to the vested rights of others.

**4. Appellate Practice—Action of Referee—Presumptions.**

Where a referee refuses to reopen a case and allow additional testimony to be introduced, in the absence of a showing of an abuse of discretion, it will be presumed that such action was proper.

*Appeal from the District Court of Arapahoe County.
Hon. Frank T. Johnson, Judge.*

Messrs. GOUDY & TWITCHELL, for appellants.

Mr. JAMES W. McCREERY and Mr. JOHN T. JACOBS, for appellee.

Mr. JUSTICE GUNTER delivered the opinion of the court:

This was an application by appellee, The Meadow Island Irrigation Company, under the Act of 1899, to change the point of diversion of water priority No. 11, decreed Meadow Island Ditch No. 1, and at the time of trial owned by appellee, from the headgate of such ditch to that of the Side Hill Ditch. Judgment was entered permitting the change to the extent of 22 cubic feet of said priority.

1. It is said this judgment was wrong for the reason that appellee, The Meadow Island Irrigation Company, had lost by abandonment all but 10 cubic feet of the priority of 26 and 33-100 cubic feet awarded by decree of 1883 to Meadow Island Ditch No. 1. It is not contended that such decree can be questioned, but that an abandonment can be shown of any part of the priority awarded thereby.—*The Platte Valley Irrigation Company v. The Central Trust Company,* 32 Colo. 102.

Abandonment was attempted to be shown by evidence, as to the carrying capacity of Meadow Island Ditch No. 1, as to the number of acres irri-

gated thereby, since the rendition of the decree awarding priority, also as to the duty of water with reference to lands lying under the ditch. As to all of these points, the evidence was substantially conflicting and widely variant. To sum up, upon this issue of abandonment the evidence was in substantial conflict. The following are the findings of the referee and the trial judge thereon. The referee finds:

"That the appropriation of the Meadow Island, amounting to twenty-two feet of water, has, since the 28th day of April, 1883, and up to the present time, been continuously diverted, appropriated and applied to the irrigation of lands and for domestic purposes by the said Meadow Island Ditch No. 1, and the consumers of water therefrom, and that said appropriation of 22 cubic feet has at all times been necessary for said use and purposes; that the remaining portion of the appropriation, to wit, 4 and 23-100 cubic feet, has not, since the 28th day of April, 1883, been diverted and applied to a beneficial use by Meadow Island Ditch No. 1."

In the opinion of the trial judge appears:

"Taking the entire testimony upon this point, I am inclined to believe that the referee is correct in finding that an abandonment has not taken place in regard to disuse of this water, except the four feet and some inches, as set forth in his report."

By said findings, upon conflicting evidence, we are concluded.

2. It is next contended that the change in the point of diversion will injuriously affect vested rights of others.

There was evidence to sustain the following finding of the referee, which was approved by the court. The referee found:

"That the appropriators and consumers of water in district No. 2, division No. 1, and the vested rights of others in and to the use of water in said district, will not be injuriously affected by the change or the diversion of the appropriation of the Meadow Island No. 1, of twenty-two cubic feet of water per second of time, from the Meadow Island Ditch No. 1, to the Side Hill Ditch now owned by The Meadow Island Irrigation Company."

It is contended by appellant that the mere fact that the twenty-two feet diverted will be applied to the irrigation of a larger acreage proves that the diversion and the changed application will work injuriously to the rights of others. This by no means follows. Appellee has a right to divert its priority, twenty-two cubic feet of water per second of time; it has the right to apply such diversion to a larger or smaller acreage, as it may see fit, the limitation being that it shall not divert a larger quantity of water, measured either by volume or time, than the priority entitled it to.—*The Platte Valley Irrigation Company v. The Central Trust Company, supra; Fort Lyon Canal Company v. Chew*, 81 P. (Colo.) 37.

As said in *Cache la Poudre I. Co. v. L. and W. R. Co.*, 25 Colo. 144:

"An enlarged use may mean that more land is being irrigated with the same quantity of water than formerly was employed in irrigating fewer acres. It does not necessarily imply that a greater volume is required."

We repeat, the mere fact that it is the intention of appellee to apply the water, diverted from its original headgate into the new headgate and new ditch, upon a larger acreage does not even presumptively establish that more water, measured in time or quantity, will be used than was diverted through

the original headgate, nor will it presumptively establish injury to the vested rights of others.

3. It is next contended that error was committed by the referee in not permitting a reopening of the case and the submission of additional testimony. No reason has been shown why the referee abused his discretion in refusing to reopen the case. In the absence of such showing, we must conclude that the referee did not abuse his discretion. His action was approved by the trial judge.

4. It is said the court erred in entering a decree authorizing the transfer of the water in litigation for domestic purposes. The report of the referee found that the petitioner was entitled to have twenty-two cubic feet of water transferred for irrigation and domestic purposes. It is apparent from an examination of the record that the purpose and real effect of this finding was to permit a transfer of the water for irrigation purposes, and the court expressly ruled that the words "domestic purposes" should be eliminated from the decree as reported by the referee, and the decree in the record shows the elimination of these words. The decree showed a diversion of twenty-two cubic feet of water per second of time for irrigation purposes.

We find no reversible error in the record.

The judgment should be affirmed.

*Affirmed.*

The CHIEF JUSTICE and Mr. JUSTICE MAXWELL concurring.