No. 15,600.

ENLARGED SOUTHSIDE IRRIGATION DITCH COMPANY ET AL. *v.* JOHN'S FLOOD DITCH COMPANY ET AL.

(183 P. [2d] 552)

Decided June 30, 1947.

Mr. Forrest C. Northcutt, for plaintiffs in error.

Mr. A. W. McHendrie, for defendants in error.

*In Department.*

Mr. Justice Stone delivered the opinion of the court.

The Enlarged South Side Ditch, sometimes called the Pulaski ditch, the John's Flood Ditch and the Hoehne Ditch all divert water from the Las Animas or Purgatoire river. The John's Flood Ditch is used for the carriage of approximately twenty-four second feet of water of early priorities for the irrigation of lands in the river bottom; the Hoehne Ditch for the carriage of approximately twenty-two second feet of substantially like priorities for the irrigation of adjoining lands, and the Enlarged South Side Ditch for the carriage of water of early priorities, but junior to those of the other two ditches, for the irrigation of neighboring lands on the south side of the river.

In the year 1908, long after the appropriation of the water diverted through said ditches, defendant, the Model Land and Irrigation Company, constructed a large reservoir located above and to the north of the lands irrigated by them, together with a canal extending some ten miles from the river to the reservoir and thence some fifteen miles from the reservoir to a twenty thousand acre tract, several miles distant from the river, which it desired to irrigate. The Model Company had only storage rights, all of which were junior to the rights of the other named ditches, until December, 1918, when it purchased sixty per cent of the capital stock of the John's Flood Ditch Company, together with certain of the water priorities which were individually owned, but carried through its ditch and approximately 2,000 acres of bottom land irrigated or adapted to irrigation therefrom, thereby acquiring right to the use of approximately one-half of the early priorities diverted through said ditch. Prior to such purchase the John's Flood Ditch had terminated at an arroyo into which any waste water had formerly run and through which such water had returned to the river. Straightway upon purchase of control by the Model Company, the John's Flood Ditch was extended from the arroyo to the Model reservoir so that all waste water and all water diverted into the ditch, and not used in irrigation of the lands formerly irrigated by it, were carried to the reservoir for use in irrigation of the Model lands. At a subsequent adjudication there was awarded to the John's Flood Ditch further priority of right to one hundred second feet of water junior to all the rights of the other ditches mentioned, the court finding that, "Water has been applied thru and by means of said ditch for beneficial purposes to the irrigation of approximately 2300 acres of land, to the extent of one hundred cubic feet of water per second of time, in addition to the adjudicated priorities thereof, which were applied to approximately 1100 acres of land. That in December, 1918, said ditch was extended about

3600 feet into the inlet ditch of the reservoir of The Model Land and Irrigation Company; and since said date the waters carried by said ditch have also been used as a supplemental supply for the beneficial irrigation upon approximately 12,000 acres of land under said system, in addition to the adjudicated priorities of said ditch; and that one hundred cubic feet of water per second of time is necessary to properly and adequately irrigate the land to which it has heretofore, and now is being applied * * *."

The headgate of the John's Flood Ditch is located some three miles below that of the Enlarged South Side, and three miles above that of the Hoehne ditch, while the headgate of the Model canal is about one mile north of that of the John's Flood Ditch. Seepage and return water from these ditches helps supply water to satisfy the earlier priorities of three ditches diverting water several miles down the stream. When that is not sufficient, it is necessary to limit diversion through the upper ditches in sufficient amount to supply the lower ditches. In 1942 the John's Flood Ditch headgate was washed out and the course of the river changed as a result of flood. Since that time the waters of the John's Flood Ditch have been diverted through the headgate of the Model canal, through which they are carried for about one mile, and then by connecting channel delivered to the John's Flood Ditch.

Plaintiffs, the Enlarged South Side Irrigation Ditch Company and the Hoehne Ditch Company, brought action against the John's Flood Ditch Company and the Model Land and Irrigation Company and others, alleging in substance that defendants had: (1) Changed the point of diversion of the water decreed to the John's Flood Ditch to the headgate of the Model canal; (2) diverted and stored said water in the Model reservoir, and (3) enlarged the use of said water by applying it to the irrigation of lands under the Model canal, all to the

injury of plaintiffs, and they seek injunctive and equitable relief.

Thereafter, petition was filed for change of point of diversion of the John's Flood Ditch pursuant to statute, and answer made in the injunction suit raising issue by general denial and by affirmative assertion of right to divert and use the water as alleged in the complaint. The two proceedings were consolidated for trial. The court's determination of the issues on petition for change of point of diversion is separately reviewed. See, *Enlarged Southside Irrigating Ditch Co. v. John's Flood Ditch Co.*, 116 Colo. 589, 183 P. (2d) 556. On the second issue the court found that the John's Flood Company and Model Company had been, and were, illegally using for storage purposes the direct flow priorities decreed to the John's Flood Ditch, enjoined continuance of such use, and directed the installation of measuring devises to facilitate enforcement of the decree. As to the third issue raised by the pleadings, to wit: Injury to plaintiffs resulting from use of the water decreed to the John's Flood Ditch in irrigation of the Model lands, the court failed to make any findings of fact or state any conclusions of law; and requested findings by plaintiffs that such change had resulted in an enlarged use both in quantity and time and had diminished the supply of seep and return water available to supply the earlier priorities of the ditches down the river, and had resulted in increased losses from evaporation, all to plaintiffs' injury, were refused by the court. The result of the court's decree by implication is, to permit continued use of the John's Flood Ditch priorities in irrigation of the Model lands in addition to its use on the lands in the river bottom formerly irrigated by it, and plaintiffs below as plaintiffs in error here urge as error the refusal of the trial court to make findings on the issue of enlarged use and diminished supply of return water as requested by them.

Had there been no request for specific findings of fact

as to increased use and injury to plaintiffs, and had there been no dispute as to the necessity for such findings as basis for the decree, it might be urged that findings of no increased use or damage to plaintiffs was implicit in the decree. Here, however, not only was request made for such findings of fact, but also it was urged in behalf of defendants: First, That such findings were unnecessary for the reason, as stated in their brief, that "so long as the ditch changing the place of use does not divert more water from the stream than its priorities call for, no other appropriators can complain;" second, that the trial court was without jurisdiction to render the judgment sought by plaintiffs; third, that the issue of injury was res judicata; fourth, that plaintiffs were barred by the four-year statute of limitations as a result of the 1925 adjudication decree; fifth, that claim of enlarged use by the application to an increased acreage is contradicted, refuted and adjudicated adversely to the contention of plaintiffs by the express terms of the adjudication decree of 1925; and sixth, that plaintiffs failed to sustain the burden of proof.

■ Counsel for defendants in support of the first contention cites as the leading case, *Cache La Poudre Co. v. Larimer & Weld Res. Co.*, 25 Colo. 144, 53 Pac. 138, but has failed to note that the writer of that opinion said subsequently, in *Fort Lyon Canal Co. v. Chew*, 33 Colo. 392, 81 Pac. 37, that in the Cache La Poudre case, supra, "The point was not mooted, that a priority of certain volume was being used for a longer time than its owners were entitled to use it." While general statements may be found in support of defendants' contention, such is not the law. Any uncertainty from the earlier cases was removed by the opinion in *Fort Lyon Co. v. Rocky Ford Co.*, 79 Colo. 511, 246 Pac. 781. As we said in *Baker v. Pueblo*, 87 Colo. 489, 289 Pac. 603, speaking through Campbell, J., "Read into every decree, regardless of its language, is the unquestioned law of this state that an owner of a water priority may use the

quantity awarded only when good irrigation usage justifies it, and when the needs of the land are satisfied, the water must no longer be used by him, but must be permitted to flow uninterruptedly in the channel of the stream. * * * A right to use of water for irrigation is limited in time and volume by the needs of the land and the law reads this limitation into a decree declaring the right." The owner of a priority for irrigation has no right, as against a junior appropriator, to waste it; neither has he the right to increase the amount or extend the time of his diversion to enable him to put it to double use by irrigation of other lands in addition to those for which it was appropriated (*Fort Lyon Canal Co. v. Chew, supra*); nor to lend, rent or sell to others the excess water after irrigation of the land for which it was appropriated, to the detriment of junior appropriators, and such limitation of right of use cannot be circumvented by shifting the use to other lands. The well-recognized right to change either the point of diversion of the water right or its place of use is always subject to the limitation that such change shall not injure the rights of subsequent appropriators.

■ Defendants' second contention, that the court was without jurisdiction on the issue of enlarged use, is based on the decree of January 12, 1925, in the adjudication proceeding where there was awarded to the John's Flood Ditch a flood-water priority for one hundred second feet, and on the further contention that such decree adjudicated the right to use the water on an enlarged acreage and on the lands under the Model system. The findings and decree in that proceeding are conclusive only as to the date and amount of priorities there adjudicated to the ditch, to wit: One hundred second feet as of October 20, 1902. Defendants here offered in evidence such findings and decree in that proceeding. As to the flood-water right so decreed, the court there found that the water was appropriated for use through the John's Flood Ditch for supplemental irrigation in connection with the

extension of the ditch to the Model reservoir and for use on the lands under the Model, as well as those under the original John's Flood Ditch, and all the evidence in the instant case supports that finding. Accordingly the right to the use of water under that one hundred second foot priority on lands under the Model canal is undisputed and, as we understand, such right is not intended to be challenged by plaintiffs. But even if such finding were conclusive, there is no finding in the adjudication decree as to use of the earlier priorities on the lands under the Model ditch or on any increased acreage under the John's Flood Ditch. On the contrary, the finding by the court in the adjudication proceeding as to the earlier priorities here involved is that they "were applied to approximately 1100 acres of land." That evidence is material to the issue here involved but is far from beneficial to defendants.

Since the adjudication proceeding is conclusive only as to the date and amount of appropriation therein decreed, and as to these there is no controversy, defendants' contention as to res judicata and the four-year statute of limitations is without merit, and the contention that the decree in that proceeding adjudged an enlarged use, as we have seen, is not a proper construction of the decree.

As to defendants' last contention that plaintiffs have failed to sustain the burden of proof, little need be said in view of the disposition we must make of the issue. For the assistance of the trial court, however, it should be borne in mind that the burden of proof is on the party seeking change, either of point of diversion or the place of use, and that the inference that use of water on increased acreage does not presumptively establish increased burden, either in time or quantity, which might be gathered from Cache La Poudre Co. v. Larimer & Weld Res. Co., supra, as quoted in defendants' brief or Fulton Irr. D. Co. v. Meadow Island Co., 35 Colo. 588, 86 Pac. 748, if intended as declaration of legal rule, has been overruled by subsequent decisions. In fact, the acreage

under irrigation is the principal basis of measurement of the use of water in the adjudication of priorities, and use on increased acreage of necessity is evidence, although rebuttable, of increased use either in volume or time.

■ If the changed and additional acreage irrigated subsequent to the extension of the John's Flood Ditch to the Model reservoir resulted in a greater use under the priorities diverted through the ditch (except that diverted under the 1925 decree), then plaintiffs were entitled to injunctive relief against use of such waters in irrigation under the Model ditch or to limitation of the use to such amount and upon such terms as the court may find just and practicable.

■ For the reasons above stated the trial court in its determination of the issues raised was required to make a finding as to increased use and changed conditions, if any, resulting from the use of the early priorities decreed through the John's Flood Ditch in irrigation of the lands under the Model canal. Among the matters properly to be considered in determining such issue are those mentioned in *Trinchera Ranch Co. v. Trinchera Irr. Dist.,* 83 Colo. 451, 266 Pac. 204, and *Flasche v. Westcolo Co.,* 112 Colo. 387, 149 P. (2d) 817. Accordingly, the case is remanded for a finding by the trial court upon the evidence heretofore submitted, or further evidence if deemed advisable by the court, as to the injury, if any, to plaintiffs by virtue of changed or additional use of the water decreed to John's Flood Ditch through irrigation of lands under the Model canal, and for such further action as may be deemed proper in accordance with the views expressed in this opinion.

Mr. Chief Justice Burke and Mr. Justice Hays concur.