# September Term, 1949

---

No. 16,121.

ENLARGED SOUTHSIDE IRRIGATION DITCH COMPANY ET AL.
*v.* JOHN'S FLOOD DITCH COMPANY ET AL.
(210 P. [2d] 982)

Decided September 13, 1949. Rehearing denied October 31, 1949.

423

**424**

Mr. FORREST C. NORTHCUTT, for plaintiffs in error.

Messrs. McHENDRIE & POINTER, for defendants in error.

*En Banc.*

MR. JUSTICE STONE delivered the opinion of the court.

INSOFAR as we are presently concerned, this action is in the nature of a suit brought by plaintiffs in error to enjoin or limit the taking of early decreed waters of the John's Flood Ditch, by an extension thereof, into the Model reservoir and ditch and the use thereof in irrigation of lands in the Model tract lying thereunder. The case was previously considered by us in *Enlarged Southside Irrigation Ditch Company, et al. v. John's Flood Ditch Company, et al.*, 116 Colo. 580, 183 P. (2d) 552, wherein we remanded the case for finding by the trial court on the issue of increased use and changed conditions, if any, resulting from this use of these early priorities. Upon retrial, the only further evidence received was a decree of January 12, 1925, awarding to the Model Ditch 200 cubic feet of water per second of time junior to the rights of all other ditches here concerned, and certain testimony as to the John's Flood Ditch taken in the adjudication proceeding wherein that decree was entered. Upon the basis of the testimony introduced at the first hearing and the additional testimony mentioned, the trial court made findings, including the following:

"5. That from and after the date of the acquisition by

the said defendant, The Model Land and Irrigation Company, of said rights in said John's Flood Ditch, to the present time, there has not been diverted from the said Las Animas river, or otherwise, through and by means of the said John's Flood ditch any greater quantity of water, measured either in volume or time, than had been theretofore diverted and used by and through said John's Flood ditch for beneficial application to the lands originally irrigated by said ditch.

"6. That the aforesaid change in place of use and application of the priorities of the right to the use of water belonging, awarded and decreed to said John's Flood ditch, did not, and does not, constitute or create any enlarged use of said appropriations or priorities of right to the use of water belonging to said ditch, and that there is not now, and never has been, since the acquisition of the right, title and interest of the said defendant, The Model Land and Irrigation Company, in and to the ditch, water rights, appropriations and priorities of right to the use of water awarded, decreed and belonging to the owners of the said John's Flood ditch, any enlarged or extended use of said water, water rights and appropriations awarded, decreed and belonging to said John's Flood ditch."

Pursuant to such findings the court refused to limit or enjoin the diversion and use of waters of the John's Flood Ditch through the Model ditch and reservoir upon lands of the Model tract. These findings and consistent decree of the court are here challenged by specifications which go to the sufficiency of the evidence to sustain the findings.

The factual background here involved is set out in our previous opinion in this case. In brief, the evidence discloses that at an adjudication proceeding in the year 1903, there were awarded early priorities to each of the three ditches here involved, those of the Hoehne and John's Flood Ditch being of dates all prior to 1872, and those of the Enlarged Southside Ditch being of early

date, but junior to those of the other two. All these water rights have been, and still are, used in the irrigation of lands lying in the river bottom near Hoehne. The needs of the land for irrigation of which priorities were awarded to the John's Flood Ditch did not require full-time use of the waters so decreed to it, with the result that the water was frequently left in the stream where it was available for use by the Enlarged Southside Ditch in supplying its junior priorities and all unused seep and return waters found their way back to the stream where they were available to supply the earlier priorities of three ditches diverting water several miles below.

In 1919, the Model Land and Irrigation Company, having purchased some 2,000 acres of land lying under and in part irrigated by the John's Flood Ditch, together with 60 percent interest in the ditch and approximately a half interest in the early priorities decreed to it, extended the ditch from its former terminus to the Model reservoir. Thereafter water diverted into the ditch and not used in irrigation thereunder on the lands formerly irrigated thereby could be, and was, carried to the reservoir and from there through the Model ditch to a 20,000-acre tract of land known as the Model tract, situate several miles away and outside the valley where the water had theretofore been exclusively used. It is this use of the early water rights awarded to the John's Flood Ditch in the irrigation of lands of the Model tract, which plaintiffs in error have sought to have enjoined and which the trial court has held does not create an enlarged use of said priorities and does not constitute diversion from the river of any greater quantity of water measured either in volume or time than had been theretofore diverted and used by and through said ditch for beneficial application to the lands originally irrigated by said ditch.

Contemporaneous with the findings and decree herein, the trial court gave an opinion explanatory of those find-

ings. Such opinion, so far as it pertains to the increased use of water, is as follows:

"As to increased acreage, it will be noted that in Protestants' Exhibit 5, the total irrigated area in the Hoehne district under the John's ditch, is 1980 acres. It will also be noted that in the decree entered January 12th, 1925, it is recited in the sixth paragraph: 'That within a reasonable time after the construction thereof, water has been applied thru and by means of said ditch for beneficial purposes to the irrigation of approximately 2300 acres of land, to the extent of 100 cubic feet of water per second of time, in addition to the adjudicated priorities thereof, which were applied to approximately 1100 acres of land.'

"I take that to mean that the 2300 acres represents the total acreage irrigated in the Hoehne district, in addition to the early priorities, and this finding of the Court in said decree, is certainly conclusive as to the amount of lands irrigated in the Hoehne district prior to the time of the extension of the John's Flood ditch into the reservoir. It necessarily follows, that the land irrigated in the Hoehne district by the water from the John Flood Ditch, as shown on the map, does not exceed the amount found by the Court in said decree."

This opinion shows total failure to understand the issues to be determined by the court. Instead of supporting the court's finding, it contradicts it. The essence of this opinion, as supported by the finding of the court in the 1925 adjudication, is that the water rights of early priority with which we are here involved, amounting to approximately 24 second feet, had been appropriated for and used in the irrigation of approximately 1,100 acres of land in the Hoehne district and that at the time of the trial, the acreage irrigated in that district had been increased to 1980 acres. It is true that the court found that water had been applied to 2300 acres additional by virtue of which fact it was awarded a flood water decree for 100 second feet additional as of date of

October 20, 1902, but that decree was junior to all the decreed rights of the Hoehne ditch and the Enlarged Southside Irrigation Ditch and no rights thereunder could be asserted as against the earlier rights belonging to those ditches. The right to use that priority on lands of the Model tract, when it is available, is not challenged.

Defendants' own witnesses, including the president of the Model company, who also was the vice-president of the John's Flood Ditch Company, and the superintendent of both ditches, and the ditch rider of the Model Ditch Company all testified as to increase of acreage under irrigation in the Hoehne vicinity from the John's Flood Ditch, independent of the additional use of the water in irrigation of the Model tract. There is no evidence or contention as to more economical use of the water on the Hoehne lands than under earlier usage. The records of the state engineer's office, admitted in evidence, show increase in the quantity of water diverted through John's Flood Ditch from approximately 7,000 acre feet in 1918 to amounts in excess of 9,000 acre feet every subsequent year shown.

That such use injured plaintiffs is established by abundant evidence, particularly that of the water commissioner who testified that when the lands irrigated under the John's Flood Ditch were confined to those in the vicinity of Hoehne, it was the practice for Mr. John to call him up, telling him he wouldn't have any use for the water and that on such occasions it would be turned for use by the Enlarged Southside Ditch; that since the Model Land and Irrigation Company bought into the John's Flood Ditch they generally use all the water all the time.

Appropriations of water for irrigation are made by and for use on specific land. The rate or volume which may rightfully be diverted under a decreed priority is measured by the decree. The time during which water may be diverted thereunder is measured by the reasonable needs of the land, and when the water is

not so needed, it may no longer rightfully be diverted from the stream, but must be left therein for use of subsequent appropriators. Junior appropriators have a vested right in the continuance of conditions existing on the stream at the time their appropriations were made. While the right to change the place of use of water for irrigation is undisputed, equally undisputed is the rule that such right is conditional and limited; conditional that it shall not interfere with the vested rights of junior appropriators in the continuance of conditions existing at the time of their appropriations, and limited not only by the volume use stated in the decree, but also by the time use measured by the needs of the land for irrigation of which the water was decreed.

Counsel for defendants in error discuss at length the question of changed place of use, and cite authority pertinent thereto, but nowhere is there any substantial evidence or contention of decreased acreage or decreased use of these water rights on the lands for which they were appropriated and on which they are still used. The end sought here is not changed use, but additional use. It is not sought to use the water to irrigate lands under the Model tract instead of using it upon the Hoehne lands for irrigation for which it was decreed; rather it is sought to continue full irrigation of the lands for which it was decreed, and even to increase such use, and at the same time to irrigate additional lands therewith, thus increasing the length of time of diversion and continuing the use of water which should be returned to the stream for the benefit of other appropriators. This may not be done. As long ago said by Mr. Justice Campbell in *Fort Lyon Canal Co. v. Chew*, 33 Colo. 392, 81 Pac. 37: "The appropriation must be made in connection with some particular tract of land, and though it be not essential to its continued existence that the application shall be forever confined to the identical land for which the diversion was made, yet, so long as the water is used in connection with that land, it cannot be made to

do duty thereto and at the same time, or in the same season, be used for the irrigation of some other tract, as against the rights of other appropriators which have theretofore attached."

The finding of the trial court, that there has not been diverted any greater quantity of water either in volume or time by its additional use on the lands of the Model tract, is not supported by the evidence, all of which establishes increased time use thereby; such additional use of water decreases the amount available for the use of plaintiffs in error in the irrigation of their lands, and is a substantial change to their detriment in the conditions existing on the stream at the date of, and subsequent to, their appropriations.

Accordingly, the case is remanded with instructions that the defendants, the John's Flood Ditch Company and the Model Land and Irrigation Company, be enjoined and restrained from using any waters diverted from the Las Animas river by virtue of any priority awarded by decree of August 10, 1903, for the irrigation of lands under the Model Ditch or of running any of such waters into the Model reservoir.

Mr. Chief Justice Hilliard and Mr. Justice Alter dissent.