Concerning the Application for WATER RIGHTS OF CENTRAL COLORADO WATER CONSERVANCY DISTRICT and Ground Water Management Subdistrict of the Central Colorado Water Conservancy District in Weld County.

Central Colorado Water Conservancy District and Ground Water Management Subdistrict of the Central Colorado Water Conservancy District, Applicants–Appellants/Cross–Appellees,

and

Cache La Poudre Water Users Association, Opposer/Appellant,

v.

City of Greeley acting by and through its Water and Sewer Board, Greeley Irrigation Company, Irrigationists Association, and City of Thornton, Opposers/Appellees,

and

City of Boulder and Centennial Water and Sanitation District, Opposers/Appellees/Cross–Appellants,

and

James Hall, Division Engineer, Water Division 1, Appellee.

Concerning the Application for Water Rights of Central Colorado Water Conservancy District and Ground Water Management Subdistrict of the Central Colorado Water Conservancy District in Weld County.

Central Colorado Water Conservancy District and Ground Water Management Subdistrict of the Central Colorado Water Conservancy District, Applicants/Appellants/Cross–Appellees,

and

Cache La Poudre Water Users Association, Opposer/Appellant,

v.

City of Greeley acting by and through its Water and Sewer Board, Greeley Irrigation Company, City of Thornton, Aggregate Industries–WCR, Inc., Opposers/Appellees,

and

City of Boulder, Centennial Water and Sanitation District, and The Harmony Ditch Company, Opposers/Appellees/Cross–Appellants,

and

James Hall, Division Engineer, Water Division 1, Appellee pursuant to C.A.R. 1(e).

Nos. 05SA120, 05SA121.

Supreme Court of Colorado, En Banc.

Nov. 6, 2006.

Lind, Lawrence & Ottenhoff, LLP, Kim R. Lawrence, P. Andrew Jones, Bradley C. Grasmick, David P. Jones, Greeley, Colorado, Attorneys for Applicants–Appellants–Cross–Appellees.

Fischer, Brown & Gunn, P.C., Daniel K. Brown, William H. Brown, William R. Fischer, Brent A. Bartlett, Fort Collins, Colorado, Attorneys for Opposer–Appellant Cache La Poudre Water Users Association.

Trout, Raley, Montaño, Witwer & Freeman, P.C., James S. Witwer, Lisa M. Thompson, Denver, Colorado, Attorneys for Opposer–Appellee City of Greeley, acting by and through its Water and Sewer Board.

Dietze & Davis, P.C., Star L. Waring, Boulder, Colorado, Attorney for Opposer–Appellee Greeley Irrigation Company.

Moses, Wittemyer, Harrison & Woodruff, P.C., Veronica A. Sperling, Brian A. Knutsen, Boulder, Colorado, Attorneys for Opposers–Appellees–Cross–Appellants City of Boulder and Centennial Water and Sanitation District.

Timothy R. Buchanan P.C., Timothy R. Buchanan, Kara Godbehere Goodwin Arvada, Colorado, Attorneys for Opposer–Appellee–Cross–Appellant The Harmony Ditch Company.

Fowler, Schimberg & Flanagan, P.C., Timothy J. Flanagan, Denver, Colorado, Attorneys for Opposer–Appellee Aggregate Industries–WCR, Inc.

No appearance by or on behalf of Opposer–Appellee City of Thornton, Opposer–Appellee Irrigationists Association, Water District 1, or Appellee James Hall.

Justice EID delivered the Opinion of the Court.

In this appeal we consider the extent of a water right held by the Central Colorado Water Conservancy District and its Ground Water Management Subdistrict ("Central"). Central filed two applications in the District Court for Water Division No. 1 seeking to change the use of a portion of its water right, which it holds by virtue of its ownership of 77 shares of stock in the William R. Jones Ditch Company. In order to rule on Central's application, the water court was required to determine (1) the lawful historic use of the Jones Ditch Water Right under an appropriation made in 1882, and (2) Central's share of the consumptive use of that water right.

The water court found that the Jones Ditch Water Right was an appropriation of an absolute water right, and held that the lawful historic use of the water right was limited to the volume of water sufficient to irrigate approximately 344 acres, of which 37 acres are owned by Central. We affirm that holding. The water court further held that, based on a parcel-by-parcel analysis of the Jones Ditch Water Right, Central was entitled to consumptive use credit for the historic volume of water used to irrigate its 37 acres, which amounts to 66.65 acre feet per year. Because we believe that a ditch-wide analysis is more appropriate, we reverse that holding and remand the case to the water court for further proceedings on this issue.

## I.

The Jones Ditch draws water from the south bank of the Cache La Poudre River under a water right decreed in the general adjudication for the river entered on April 11, 1882 (the "1882 Decree"). The 1882 Decree permitted the Jones Ditch to draw 931 cubic feet per minute from the river for irrigation and domestic purposes, but did not expressly limit consumptive use of the water to any specific acreage. The decree was based on the testimony of the appropriator of

the water right, William R. Jones. Mr. Jones testified on November 13, 1879, that he owned "at least 300 acres that lie under the ditch on the same side of the river that can be irrigated from this ditch. I have irrigated all of this land that needs irrigation." Neither the express language of the decree nor the testimony of Mr. Jones suggested that the appropriation was intended to extend beyond the acreage irrigated by Mr. Jones in 1879, or that the appropriation could be extended beyond those acres upon the satisfaction of a subsequent condition.

Testimony in the proceedings below revealed that, when the 1882 Decree was entered, Mr. Jones owned no more than 560 acres in proximity to the Jones Ditch. Of this acreage, approximately 344 acres are down grade of the Jones Ditch; presumably, these are the "at least 300 acres" to which Mr. Jones referred in his testimony. Evidence presented to the water court also demonstrated that, beginning in 1893, Mr. Jones and his successors irrigated additional acreage with water drawn from the Jones Ditch. By 1920, the Jones Ditch irrigated at least 700 acres.

In 1944, many years after Mr. Jones's death, the Jones Ditch Company was incorporated as a mutual ditch company. The Jones Ditch Company holds the Jones Ditch Water Right for the benefit of its shareholders. Central owns 139 of the 200 outstanding shares in the Jones Ditch Company.

In its applications filed with the water court below, Central seeks to change the use of water attributable to 77 of its shares in the Jones Ditch Company from domestic and irrigation to irrigation, augmentation, replacement, exchange, and recreation by direct release or storage for later release, with a right to fully deplete the consumable portion of the water.

In order to rule on Central's applications, it was necessary for the water court first to determine the extent of the lawful historic use of the Jones Ditch Water Right. Central argued that the Jones Ditch Water Right extended to the approximately 700 acres irrigated with water drawn from the Jones Ditch since the 1920s. Several entities opposed Central's application: the City of Greeley, Greeley Irrigation Company, Irrigationists Association, Aggregate Industries–WCR, Inc., the City of Thornton, the City of Boulder, Centennial Water and Sanitation District, and the Harmony Ditch Company (collectively, the "Opposers").

The Opposers argued that Central's interpretation of the 1882 Decree would result in an unlawful enlargement of the Jones Ditch Water Right, which they claimed was limited to the volume necessary to irrigate the 344 acres originally irrigated by Mr. Jones. Central's engineer acknowledged at trial that the annual historic use of the Jones Ditch Water Right was approximately 1.49 acre feet per acre based on irrigation of approximately 700 acres. At 1.49 acre feet per acre, the irrigation of 344 acres would consume approximately 536 acre feet of water per year. Irrigating the approximately 700 acres that Central claimed are covered by the Jones Ditch Water Right would involve the consumptive use of approximately 1,100 acre feet per year.

In a thorough and carefully drafted pretrial order, the water court determined that the Jones Ditch Water Right extended only to the 344 acres that were irrigated when the 1882 Decree was entered, and that the expanded irrigation from 1882 to 1920 could not be considered part of the Jones Ditch's lawful historic use. The water court based its decision on Mr. Jones's 1879 testimony, which revealed that he sought an absolute right to irrigate no more than the approximately 300 acres that he was irrigating at the time the 1882 Decree was entered.

After establishing the extent of the Jones Ditch Water Right, the water court turned to determining Central's portion of that right. Central argued that the water court should conduct a parcel-by-parcel analysis, whereby the court would award Central credit for the consumptive use of water necessary to irrigate the 37 acres originally subject to the 1882 Decree and now owned by Central. The Opposers disagreed, and argued that the water court should determine the ditch-wide consumptive use and then award Central its pro-rata share of the Jones Ditch Water

Right based on its ownership of stock in the Jones Ditch Company.

The water court's analysis was complicated by the terms of a decree entered in 1992 (the "1992 Decree") that awarded Central 401.4 acre feet of consumptive use per year based on its ownership of 62 shares of stock in the Jones Ditch Company (these shares are not at issue in the present case). The evidence presented to the water court below indicated that the consumptive use of the entire Jones Ditch Water Right was approximately 520 acre feet per year.[1] Under a ditch-wide analysis, therefore, Central would only be entitled to a total of 361 acre feet per year of consumptive use for *all* of its shares of stock in the Jones Ditch Company. Since the 1992 Decree already awarded Central 401.4 acre feet per year of consumptive use for its ownership of 62 shares, a ditch-wide analysis would mean that its additional 77 shares (the shares subject to Central's current change applications) would provide Central with no additional water use credit.

■ The water court held that the doctrine of res judicata—specifically, the doctrine of claim preclusion[2]—prevented a ditch-wide analysis of the Jones Ditch Water Right, since that would essentially require the water court to revisit the 1992 Decree and revise the 401.4 acre feet per year credit awarded to Central.[3] The water court therefore analyzed Central's water right on a per-parcel basis, and held a trial to determine the

historic amount of water used to irrigate the 37 acres owned by Central. Based on that analysis, the water court awarded credit to Central for 66.65 acre feet per year of consumptive use.

Central now appeals the water court's determination that the lawful historic use of the Jones Ditch Water Right is limited to the 344 acres irrigated by Mr. Jones in 1882. We affirm the water court's order. Some of the Opposers appeal the water court's decree awarding Central 66.65 acre feet of consumptive use.[4] We reverse the water court's decree and remand the case for further proceedings.

## II.

■ Colorado's "prior appropriation water law is a property rights-based allocation and administration system, which promotes multiple use of a finite resource." Gregory J. Hobbs, Jr., *Colorado Water Law: An Historical Overview*, 1 U. Denv. Water L.Rev. 1, 2 (1997). Thus "a priority system of water rights for beneficial use requires a mechanism for determining a source of supply, types of uses, date and amount of appropriation, location and identity of the diversion structure, and place of use." *Id.* at 9. Colorado "undertook the identification of existing rights and claimed rights through a litigation process," *id.*, and the 1882 Decree was a product of that process. Consequently, the

1. The 520 acre feet per year in consumptive use of the Jones Ditch Water Right is a calculation based on the 1.49 acre feet of water per acre used by the Jones Ditch (as calculated by Central's engineer) multiplied by the approximately 344 acres originally irrigated by Mr. Jones in 1882. However, the 1.49 acre feet per acre of consumptive use is itself an average amount arrived at by Central's engineer based on the presumption that the Jones Ditch lawfully irrigated over 700 acres. The average per-acre consumptive use of the Jones Ditch Water Right could be different if the analysis is limited, as we hold today, to the 344 acres lawfully irrigated by the Jones Ditch. As we explain in Section III below, this discrepancy leads us to remand the case to the water court for further consideration.

2. "Claim preclusion" and "res judicata" often are used interchangeably to refer to the doctrine "that an existing judgment is conclusive of the rights of the parties in any subsequent suit on the

same claim." *Pomeroy v. Waitkus*, 183 Colo. 344, 350, 517 P.2d 396, 399 (1973). Claim preclusion is different from the doctrine of "issue preclusion" (sometimes known as "collateral estoppel"), which "holds that the final decision of a court on an issue actually litigated and determined is conclusive of that issue in any subsequent suit." *Id.* In its order, the water court referred to res judicata, but in this opinion we will refer to the separate doctrines of claim and issue preclusion.

3. The water court also indicated in a February 17, 2005, pre-trial order that it did not have sufficient facts to undertake a ditch-wide analysis.

4. The Opposers who have joined in the cross-appeal are the City of Boulder, the Centennial Water and Sanitation District, and the Harmony Ditch Company.

Jones Ditch Water Right is a creature of the 1882 Decree and the law surrounding it.

■ We agree with the water court's determination that the 1882 Decree was for an absolute water right. The water court based its determination on Mr. Jones's testimony that he irrigated all of his land that needed irrigation. Nothing in either the language of the 1882 Decree or Mr. Jones's testimony suggests that he intended to include a condition for irrigating additional acres in the future. The nature of Mr. Jones's request confirms that the 1882 Decree was for an absolute appropriation that created a vested property right that "entitles the subsequent operation of that right through its decreed point of diversion *in a specified amount.*" *Williams v. Midway Ranches Prop. Owners Ass'n, Inc.*, 938 P.2d 515, 521 (Colo.1997) (emphasis added).

■ Having established that the 1882 Decree was an absolute appropriation, the water court was charged with determining the "specified amount" of that appropriation. Absolute water rights "are limited to an amount sufficient for the purpose for which the appropriation was made, even though such limitation may be less than the decreed rate of diversion." *Rominiecki v. McIntyre Livestock Corp.*, 633 P.2d 1064, 1067 (Colo. 1981). Thus "the right to change a . . . type, place or time of use, is limited by the appropriation's historic use." *Santa Fe Trail Ranches Prop. Owners Ass'n v. Simpson*, 990 P.2d 46, 54 (Colo.1999). For change purposes, the lawful historic use of an absolute decree is measured over a representative period of time for the appropriation made. *See Williams*, 938 P.2d at 522; *Santa Fe Trail*, 990 P.2d at 54. When usage is decreed for irrigation purposes, the change decree is limited to both the express volume of water utilized *and* the specific acreage irrigated. *See Enlarged Southside Irr. Ditch Co. v. John's Flood Ditch Co.*, 120 Colo. 423, 428, 210 P.2d 982, 984–85 (1949) [hereinafter *John's Flood II*] ("Appropriations of water for irrigation are made by and for use on specific land."); *Danielson v. Kerbs Ag., Inc.*, 646 P.2d 363, 373 (Colo.1982) (same).

These black-letter principles of Colorado water law lead us to the same conclusion

reached by the water court: a water right decreed for irrigation purposes cannot lawfully be enlarged beyond the amount of water necessary to irrigate the lands for which the appropriation was made. There is no question that Central's interpretation of the 1882 Decree would substantially enlarge the lawful historic use of the Jones Ditch Water Right.

Nevertheless, Central offers three reasons for why the lawful historic use of the Jones Ditch Water Right includes both the water used to irrigate the 344 acres *and* the additional acreage irrigated by Mr. Jones and his successors with water drawn from the Jones Ditch after 1882. First, Central claims that, at the time the 1882 Decree was entered, Colorado law did not limit lawful historic use to the acreage irrigated when the decree was entered. Second, Central argues that the 1882 Decree is silent as to acreage, and consequently, that the water court was wrong to limit the decree to the acreage originally irrigated by Mr. Jones. Third, Central contends that the doctrine of laches bars the Opposers from challenging the use of water from the Jones Ditch to irrigate acres in excess of those irrigated in 1882.

We are not persuaded by Central's arguments and therefore affirm the water court's order as to the lawful historic use of the Jones Ditch Water Right.

### A.

Central does not dispute the fact that *current* Colorado law implicitly limits every use under a water court decree to the amount of water necessary to irrigate the acreage connected to the appropriation regardless of the flow rate stated in the decree. *See John's Flood II*, 120 Colo. at 429, 210 P.2d at 985. As we have explained, "acreage under irrigation is the principal basis of measurement of the use of water in the adjudication of priorities . . . ." *Enlarged Southside Irr. Ditch Co. v. John's Flood Ditch Co.*, 116 Colo. 580, 587–88, 183 P.2d 552, 555 (1947) [hereinafter *John's Flood I*].

But Central argues that the law was different in 1882, and that therefore, when the 1882 Decree was entered, Colorado law did

not limit water use to specific acreage. To support its argument, Central makes much of this Court's statement in *John's Flood I* that its previous decisions in *Cache La Poudre Irrigation Co. v. Larimer & Weld Reservoir Co.*, 25 Colo. 144, 53 P. 318 (1898), and *Fulton Irrigation Ditch Co. v. Meadow Island Irrigation Co.*, 35 Colo. 588, 86 P. 748 (1906), "if intended as declaration[s] of [a] legal rule, [have] been overruled by subsequent decisions." 116 Colo. at 587, 183 P.2d at 555. According to Central, these decisions reflected a different rule, one that would allow for lawful expanded use to the 700 acres.

We disagree. Contrary to Central's claim, neither *Cache La Poudre* nor *Fulton Irrigation* is inconsistent with an implied limitation that fixes an absolute appropriation to the acreage to be irrigated. Indeed, when read in context, the "overruling" statement of *John's Flood I* addressed an evidentiary burden issue, not the implied limitation question.[5]

In *Cache La Poudre*, the plaintiff, a junior appropriator, brought an injunction suit against the defendant, a senior appropriator, claiming that "in buying a water right, separate from the land, and transferring the place of use to other lands, the subsequent use was thereby 'enlarged' to plaintiff's injury." 25 Colo. at 145, 53 P. at 319. Thus the primary question in the case was whether the defendant could buy a water right separate and apart from the land, and use it for other purposes. We answered this question in the affirmative. *See id.* at 148, 53 P. at 319.

The only remaining question, then, was whether this sale "injuriously affected" the plaintiff. *Id.* at 148, 53 P. at 320. Here, we answered the question in the negative. We found that, while the defendant might have been using the water to irrigate a larger tract of land than that irrigated by the previous owner, this fact was not enough—in and of itself—to show that the plaintiff had diverted more water. *Id.* at 153, 53 P. at 321. Because the plaintiff had not met its burden to show injury, his request for an injunction

failed. *Id.* at 153–54, 53 P. at 321–22. We reiterated the point that use of the water on additional acreage does not "presumptively establish injury to the vested rights of others" in *Fulton Irrigation*. 35 Colo. at 592, 86 P. at 749.

Thus, *Cache La Poudre* and *Fulton Irrigation* stood for the proposition that a plaintiff could not meet its burden to show injury merely by pointing out that the defendant was irrigating additional acreage. Instead, actual evidence of increased use was necessary. This evidentiary rule was in no way inconsistent with the principle that there is an implied limitation in every absolute appropriation that fixes the appropriation to the amount of water necessary to irrigate the acreage associated with the appropriation. In *Cache La Poudre* we addressed the question of how, in the injunction context, a plaintiff can go about proving injury. We did not have an opportunity to define the extent of the defendant's appropriation in the first instance, and therefore did not address the existence of an implied limitation regarding acreage.

We made this distinction clear in *John's Flood I*, where defendants argued that plaintiffs had failed to sustain their burden of proof, again in the injunction context, to show injury because they had merely pointed to the fact that defendants used water on additional acreage. But in *John's Flood I*, we stated that such evidence could establish increased use, noting that "use on increased acreage of necessity is evidence, although rebuttable, of increased use either in volume or time." 116 Colo. at 588, 183 P.2d at 555. We went on to address the language in *Cache La Poudre*, and echoed in *Fulton Irrigation*, standing for the contrary proposition, stating that: "[T]he inference that use of water on increased acreage does not presumptively establish increased burden, either in time or quantity, which might be gathered from [*Cache La Poudre* and *Fulton Irrigation*] . . . , if intended as declaration[s] of [a] legal

5. The other cases relied upon by Central are inapposite since they do not address the expansion of water rights through use on additional acreage. *See Wadsworth Ditch Co. v. Brown,* 39 Colo. 57, 88 P. 1060 (1907) (addressing claim of injury arising from change in point of diversion); *Hassler v. Fountain Mut. Irr. Co.,* 93 Colo. 246, 26 P.2d 102 (1933) (affirming water court's determination of flow rates to senior appropriator where decree was silent).

rule, [have] been overruled by subsequent decisions." *Id.* at 587, 183 P.2d at 555. In other words, *John's Flood I* only "overruled" the "legal rule" of *Cache La Poudre* with regard to the plaintiff's ability to draw an inference from irrigation of increased acreage. Importantly, the change between *Cache La Poudre* and *John's Flood I* on the evidentiary issue did not suggest a similar change in the implied limitation that is read into every absolute appropriation that fixes the amount of water to the acreage to be irrigated by the appropriation. The sentence that follows the "overruling" sentence makes this clear. "[T]he acreage under irrigation," we concluded, "is the principal basis of measurement of the use of water in the adjudication of priorities...." *Id.* at 587–88, 183 P.2d at 556.[6]

Contrary to Central's claim, then, *Cache La Poudre* and *Fulton Irrigation* are entirely consistent with this Court's statements in *John's Flood I*, that "acreage under irrigation is the principal basis of measurement of the use of water in the adjudication of priorities," *id.*, and our statement in the companion case *John's Flood II*, that the use of water for irrigation is "measured by the needs of the land for irrigation *of which the water was decreed,*" 120 Colo. at 429, 210 P.2d at 985 (emphasis added). Under the principle of Colorado water law announced in these cases, the Jones Ditch Water Right is limited to the amount of water necessary to irrigate the approximately 344 acres originally irrigated by Mr. Jones and for which he sought an absolute decree in 1882, no matter the number of acres that may have been subsequently irrigated. The undisputed evidence at trial revealed that the post–1882 increase in irrigated acreage from the Jones Ditch involved nearly twice as much water consumption when compared to the acreage that Mr. Jones irrigated under the absolute appropriation, and thus constituted an enlargement in the overall consumptive use. Such enlargement was unlawful in 1882 for the same reason that it is unlawful today—there is an implied limitation on consumptive use in the 1882 Decree fixing the lawful amount of water to the acreage for which the water was appropriated. Any use beyond that appropriation, for however long a period, is not "historic use" for purposes of establishing the lawful historic use of the Jones Ditch Water Right, and constitutes an unlawful enlargement.

### B.

■ Central next argues that the water court should have limited its inquiry to the terms set forth in the 1882 Decree, which are silent as to specific acreage. According to Central, the water court erred when it limited the Jones Ditch Water Right on the basis of Mr. Jones's testimony in 1879. Again, Colorado law does not support Central's argument.

Importantly, the 1882 Decree is *silent*— not ambiguous—as to the specific acreage to which the decreed water would be used. The decree permits the Jones Ditch to draw 931 cubic feet per minute from the river for irrigation and domestic purposes, without referencing the actual acreage to be irrigated. Under such circumstances, as we explained above, Colorado law recognizes an implied limitation to the acreage for which the appropriation is made. *See John's Flood I,* 116 Colo. at 587–88, 183 P.2d at 555. This is not a rule for construing water decrees; it is a term implied by Colorado's law of appropriation and consumptive use. *See id.*

In order to give effect to this implied limitation, "[w]e have consistently held that statements of claim and transcripts of testimony in adjudication proceedings are admissible evidence in other actions involving the construction or interpretation of water decrees." *Orchard City Irr. Dist. v. Whitten,* 146 Colo. 127, 135, 361 P.2d 130, 133–34 (1961). Since the advent of Colorado water law, we have acknowledged that "statements

---

6. Indeed, as we have recently noted, a party seeking a change of water right, such as Central, "b[ears] the burden of quantifying the beneficial consumptive use" of the right. *Ready Mixed Concrete Co. v. Farmers Reservoir & Irr. Co.,* 115 P.3d 638, 646 (Colo.2005). The right to change a water right is thus "limited to that amount of water consumed beneficially over a representative historical period of time by use pursuant to the decree at the appropriator's *place of use.*" *Id.* at 645–46 (emphasis added).

may be likened to a pleading upon which a judgment is based, and they are proper to be introduced along with the decree to enable the court to interpret or constrain the latter in the light of the claimant's own assertion of his demand." *New Mercer Ditch Co. v. Armstrong,* 21 Colo. 357, 362, 40 P. 989, 990 (1895); *see also Drach v. Isola,* 48 Colo. 134, 141, 109 P. 748, 751 (1910) (noting that "the pleadings or statements of claim upon which the decree is based may be considered along with the decree, in ascertaining its meaning").

Mr. Jones's testimony to the water referee in 1879 is unmistakable. He sought an appropriation of water from the Jones Ditch for irrigation purposes, and described the acreage to be irrigated as "at least 300 acres that lie under the ditch on the same side of the river that can be irrigated from this ditch." Mr. Jones never suggested that he was seeking an additional appropriation, and in fact stated that he had "irrigated all of [his] land that needs irrigation." The water court was correct to base its determination of consumptive use on Mr. Jones's testimony from the 1879 proceeding.[7]  *See Farmers Reservoir & Irr. Co. v. City of Golden,* 44 P.3d 241, 250 (Colo.2002) (affirming trial court's reliance on testimony from proceedings giving rise to decree).

### C.

Finally, Central contends that the doctrine of laches bars the Opposers from challenging the irrigation of excessive acreage with water drawn by means of the Jones Ditch after 1882. Under Colorado law, the defense of laches arises from "an unconscionable delay in asserting one's rights which works to the defendant's prejudice or injury in relation to the subject matter of the litiga-

tion." *City of Thornton v. Bijou Irr. Co.,* 926 P.2d 1, 73 (Colo.1996) (internal quotation omitted). The elements of a laches defense are (1) full knowledge of the facts by the party against whom the defense is asserted, (2) unreasonable delay in the assertion of an available remedy by the party against whom the defense is asserted, and intervening reliance by and prejudice to the party asserting the defense. *See id.* In addition, a successful laches defense must "meet a high standard in the water right context"—namely, there "must be some degree of turpitude in the conduct of a party before a court of equity will estop him from the assertion of his title, when the effect of the estoppel is to forfeit his property, and transfer its enjoyment to another." *Id.* (citations omitted).

The water court found no evidence in the record to support any showing that the Opposers acted deceitfully, fraudulently or with turpitude as to the timing of their challenge to Central's applications for a change in use. Our review of the record does not reveal any clear error in the water court's findings, particularly since Central does not argue that the Opposers have acted deceitfully or fraudulently. *See In re Gibbs,* 856 P.2d 798, 801 (Colo.1993) (holding that the trial court's factual findings will not be reversed absent clear error and lack of evidence in record to support findings). When Central made its application for change, the Opposers timely raised the issue of the amount of historic consumptive use that could be decreed by means of a change application.

Thus, while it is true that over 80 years have passed since Mr. Jones first began to irrigate lands beyond the 344 acres subject to the decree, we agree with the water court's rejection of Central's laches defense. *Cf. Santa Fe Trail,* 990 P.2d at 58 (unlawful use

---

7. Central also argues that Mr. Jones's testimony was inadmissible hearsay. While evidentiary rulings are reviewed only for an abuse of discretion, *see City of Aurora v. Colo. State Eng'r,* 105 P.3d 595, 610 (Colo.2005), we have no trouble holding that such testimony was properly admitted in this case under C.R.E. 804(b)(1), which allows for the admission of "[t]estimony given as a witness at another hearing of the same or a different proceeding ... if the party against whom the testimony is now offered, or ... a predecessor in interest, had an opportunity and

similar motive to develop the testimony by direct, cross, or redirect examination." Mr. Jones had no reason to claim that he was irrigating less acreage than he actually was, and his testimony appears to have been subject to both direct and cross examination. *See People v. Bowman,* 738 P.2d 387, 389 (Colo.App.1987) (holding that prior testimony is admissible under C.R.E. 804(b)(1) where "the party against whom it is offered had the opportunity to cross-examine the witness fully at the prior proceeding").

of water for over 30 years could not be considered for determining historic use); *In re Steffens*, 756 P.2d 1002, 1005 (Colo.1988) (unlawful use of water for 40 years could not be considered for determining historic use). Central could not meet the heightened burden for establishing its laches defense against the Opposers, principally because it was unable to show that the Opposers acted deceitfully or fraudulently in waiting to challenge Central's usage. The water court correctly found that the Jones Ditch Water Right is limited to the 344 acres originally irrigated by Mr. Jones in 1882, and we affirm its holding.

### III.

■ While we agree that the lawful historic use of the Jones Ditch Water Right extends no further than the 344 acres that Mr. Jones irrigated when the 1882 Decree was entered, we conclude that Central should not have been awarded 66.65 acre feet of water based on its ownership of 37 acres subject to the Jones Ditch Water Right. For the reasons explained below, neither claim preclusion nor issue preclusion prevents a ditch-wide analysis of the Jones Ditch Water Right in this case.

Shares of stock in a mutual ditch corporation represent the stockholder's interest in the ditch's water right. *See Jacobucci v. Dist. Court*, 189 Colo. 380, 541 P.2d 667 (1975). Central's ownership of 139 of the 200 shares of the Jones Ditch Company would seem to entitle it to 69.5 percent of the consumptive use for the ditch-wide water right, and evidence presented at trial suggested that the consumptive use of the entire Jones Ditch was approximately 500 acre feet per year. Central's share of this amount (69.5 percent) would be 361.4 acre feet per year.

Therein lies the difficulty in this case. In 1992, the water court decreed in a separate action that Central's ownership of 62 shares in the Jones Ditch Company (i.e., the shares that are not at issue in this case) entitled Central to 401.4 acre feet per year of consumptive use from the Jones Ditch. Thus Central conceivably has been awarded 40 more acre feet per year than it is entitled to

receive as a shareholder in the Jones Ditch Company, apart from the additional 66.65 acre-feet awarded to Central by the water court in this case.

Central persuaded the water court to avoid a ditch-wide analysis of the Jones Ditch Water Right by asserting the doctrine of claim preclusion. Central concedes that a ditch-wide analysis would limit its share of the Jones Ditch Water Right to approximately 361 acre feet, and that—under such an analysis—it already has received an overdraft of consumptive use as a result of the 1992 Decree. Because a ditch-wide analysis, in Central's view, would hopelessly conflict with the 1992 Decree, and because the time for challenging the 1992 Decree has long since passed, Central argued below and in this appeal that claim preclusion bars a ditch-wide adjudication of the Jones Ditch Water Right in this case.

While we understand why the water court was persuaded by Central's reasoning, we ultimately are not convinced. In our view, claim preclusion is not implicated because the Opposers are not requesting a reduction or any other reconsideration of the 401.4 acre feet of consumptive use awarded to Central in 1992. *See Pomeroy v. Waitkus*, 183 Colo. 344, 350, 517 P.2d 396, 399 (1973) (explaining that claim preclusion "holds that an existing judgment is conclusive of the rights of the parties in any subsequent suit *on the same claim*") (emphasis added). Without question, "[t]he application of [claim preclusion] in appropriate circumstances is important to the stability and reliability of Colorado water rights." *Williams*, 938 P.2d at 525. For this reason, the Opposers cannot challenge Central's award of 401.4 acre feet per year of water from the Jones Ditch, since the time for contesting the 1992 Decree has long since passed. However, the Opposers in this case are not challenging the amount of consumptive use awarded in the 1992 Decree, and consequently, claim preclusion is inapplicable.

Furthermore, we see no basis for applying the related doctrine of issue preclusion to any of the contested questions in this case. As explained in *Pomeroy*, issue preclusion "holds that the final decision of a court on an issue *actually litigated and determined* is conclusive of that issue in any subsequent

suit." 183 Colo. at 350, 517 P.2d at 399 (emphasis added). Issue preclusion is inapplicable, particularly since the 1992 Decree was not the result of a ditchwide analysis of the Jones Ditch Water Right such that it would resolve all subsequent questions as to lawful historic use. *See id.* (holding that issue preclusion "does not apply to matters which could have been litigated but were not"); *cf. High Plains A & M, LLC v. Se. Colo. Water Co.*, 120 P.3d 710, 723 (Colo. 2005) (recognizing use of issue preclusion to prevent relitigation of consumptive use in aftermath of ditch-wide analysis).

The salient issue raised by the applications filed below is whether Central is entitled to any *additional* consumptive use credit for its remaining shares that were not adjudicated in 1992. As to this issue, Colorado law generally teaches that Central only is entitled to water from the Jones Ditch in proportion to its ownership of shares in the Jones Ditch Company. *See Great W. Sugar Co. v. Jackson Lake Reservoir & Irr. Co.*, 681 P.2d 484, 490 (Colo.1984) (holding that ditch company shareholders are entitled to a ratable portion of the ditch's water right "[a]bsent some express exception"). Ditch-wide analyses are preferable for many reasons, among them that they prevent expensive relitigation of consumptive use. *See High Plains A & M*, 120 P.3d at 723 (explaining benefits of ditch-wide analysis in preventing multiple litigation of identical issues). In this case, the doctrines of claim and issue preclusion are not proper bases for avoiding a ditch-wide analysis of the Jones Ditch Water Right for purposes of ruling on Central's applications.

Central also argues that section 37–92–304(6), C.R.S. (2006), precludes a recalculation of consumptive use, citing our interpretation of the statute in *Farmers Reservoir & Irrigation Co. v. Consolidated Mutual Water Co.*, 33 P.3d 799 (Colo.2001) [hereinafter *FRICO*]. In *FRICO*, we held that section 37–92–304(6) "intended to preclude review of consumptive use determinations the water court made upon entry of the judgment and decree, except through taking an appeal; and ... intended the retained jurisdiction provision to address injurious effects that result from placing the change of water right or augmentation plan into operation." *Id.* at 805. We view this as yet another manifesta-

tion of Central's claim preclusion argument, and we reject it for the same reason, namely, that the Opposers are not seeking an adjustment to the 1992 Decree.

Moreover, Central fails to address our language in *FRICO* specifically contemplating that a change proceeding—that is, a proceeding like the one commenced by Central in the water court below—is the proper avenue for addressing an alleged overdraft. We refused to allow the objector in *FRICO* to reopen a previous change proceeding, but we also held that the "pending change case is the forum for addressing the alleged overdraft," primarily because "[t]he fundamental object of a change proceeding is to secure to owners their allocated share of ... consumptive use determined by an appropriate parcel-by-parcel or ditch-wide methodology, while protecting against injury to other water rights...." *Id.* at 814. This language is meaningless—and our proposed avenue for redressing overdrafts is a chimera—if water courts cannot contemplate the effect of overdrafts in change proceedings.

We hold that the doctrines of claim and issue preclusion do not bar a ditch-wide analysis of the consumptive use of the Jones Ditch Water Right for purposes of considering Central's applications in this case. We further hold that Central's applications must be considered in light of the 401.4 acre feet of consumptive use credit awarded to Central in the 1992 Decree. Given these holdings, remand would seem to be unnecessary since Central unquestionably received more than its share of the ditch-wide water right in the 1992 Decree, based on the ditch-wide analysis presented by Central's engineer at trial, which indicates that Central is only entitled to approximately 361 acre feet in consumptive use credit.

Nevertheless, we believe that remand is appropriate because Central's ditch-wide analysis was based on the presumption that the Jones Ditch lawfully irrigated over 700 acres. On remand, the water court should decide whether a new analysis is necessary based on its holding—which we affirm—that the Jones Ditch Water Right was an absolute appropriation for irrigation of approximately 344 acres. A ditchwide analysis conceivably could be different if limited to the lawful historic use of water to irrigate only 344

acres. In addition, the water court indicated in a pre-trial order entered on February 17, 2005, that it did not have sufficient facts to undertake a ditch-wide analysis of the Jones Ditch Water Right. We therefore remand so that the water court can determine whether any additional fact-finding is necessary to determine Central's share of the consumptive use of the Jones Ditch Water Right. If the water court determines that Central's share is less than the 401.4 acre feet awarded in the 1992 Decree, then Central should not be awarded any additional consumptive use credit.

## IV.

The water court's determination that the lawful historic use of the Jones Ditch Water Right is limited to the 344 acres for which Mr. Jones made his application is affirmed. The water court's award to Central of 66.65 acre feet of consumptive use is reversed, and the case is remanded to the water court for further proceedings on the issue of Central's share of the Jones Ditch Water Right consistent with this opinion.