**V BAR RANCH LLC, Plaintiff–Appellant**

v.

**Craig COTTEN, Division Engineer for Water Division No. 3; and George Gallegos, Defendants–Appellees**

and

**Dick Wolfe, State Engineer for the State of Colorado, Appellee Pursuant to C.A.R. 1(e).**

No. 09SA191.

Supreme Court of Colorado, En Banc.

June 21, 2010.

1202

Lester, Sigmond, Rooney & Schwiesow, Erich Schwiesow, Alamosa, Colorado, Attorneys for Plaintiff–Appellant.

John W. Suthers, Attorney General, Paul L. Benington, Assistant Attorney General Natural Resource and Environment Section, Denver, Colorado, Attorneys for State and Division Engineers.

No appearance by or on behalf of George Gallegos.

Justice MARTINEZ delivered the Opinion of the Court.

## I. Introduction

Plaintiff–Appellant V Bar Ranch LLC ("V Bar") has a decreed artesian confined-aquifer well that was originally drilled in 1946. At the time of drilling, the well was used to irrigate the Southwest Quarter of Section 3, Township 35 North, Range 9 East, N.M.P.M. ("Section 3"). In 1966, the predecessors in interest to V Bar (hereinafter referred to as "V Bar") began using the well to irrigate the Northwest Quarter of Section 3 in addition to the Southwest Quarter. In 1972, V Bar filed an application for adjudication of the well, and the well was decreed three years later and given an appropriation date of 1946. The decree was silent as to the location and number of acres that would be irrigated by the well. Water from the well was used to irrigate the Southwest and Northwest Quarters until the late–1970s. In 2005, a replacement well permit was issued which explicitly allowed irrigation of both Quarters. The next year, Defendant–Appellee George Gallegos filed a request with the State Engineer's office that V Bar's replacement well permit be revoked. Gallegos argued the State Engineer erred in issuing the replacement permit because it authorized V Bar to expand the use of the well which, when drilled, was only used to irrigate the Southwest Quarter of Section 3. The State Engineer agreed and modified the replacement permit to limit irrigation to the Southwest Quarter. On appeal, the water court affirmed.

We affirm the judgment of the water court and hold that the State Engineer has the authority to modify previously-issued well permits. Further, the scope of the water right at issue is defined by the beneficial use to which the water was put at the time of appropriation. Accordingly, the State Engineer did not err in modifying the replacement permit because, at the time of appropriation, only irrigation of the Southwest Quarter was contemplated. Finally, the doctrine of equitable estoppel is inapplicable in this case.

## II. Facts and Procedural History

In 1946, V Bar drilled a well on the Southwest Quarter of Section 3 ("Well No. 1"). At the time, state law did not require registration or permitting of wells. From 1946 through 1966, water from Well No. 1 was used to irrigate the Southwest Quarter of Section 3 exclusively. However, in 1966, V

Bar acquired the Northwest Quarter of Section 3 from the State of Colorado and began irrigating both the Southwest and Northwest Quarters with water from Well No. 1. In 1972, in accordance with newly enacted legislation, V Bar filed an application with the District Court for Water Division 3 ("water court") to adjudicate Well No 1. The application stated that Well No. 1 was located in the "Southwest 1/4 of the Southwest 1/4 of Section 3" with an appropriation date of May 1, 1946. The application did not set forth the location or number of acres to which the water would be applied, nor did it set forth a maximum volumetric limitation. Three years later, the water court entered a decree adjudicating the well and granting a 1946 appropriation date; however, as with the application, the decree did not set forth any acreage or volumetric limitations on the well.[1]

V Bar used Well No. 1 to irrigate both the Southwest and Northwest Quarters of Section 3 until 1978, when the well began pumping sand and reverted back to artesian flow. At some point around 1997, V Bar attempted to restore Well No. 1; however, when this proved unsuccessful, V Bar sought a permit for a replacement well. Upon review, in 2005, the State Engineer issued V Bar a replacement permit which allowed for the use of replacement water on both the Southwest and Northwest Quarters of Section 3. V Bar then drilled the replacement well and installed sprinkler systems on the Southwest and Northwest Quarters.

Thereafter, a neighboring landowner, Defendant–Appellee George Gallegos, filed a petition with the State Engineer's office seeking revocation of V Bar's replacement well permit. Gallegos asserted that the State Engineer erred in issuing the replacement permit because the permit authorized V Bar to increase its appropriation to the injury of other vested water rights in violation of section 37–90–137(1), C.R.S. (2009). Gallegos argued that V Bar unlawfully expanded the use of Well No. 1 when it acquired the Northwest Quarter of section 3 and began irrigating that parcel with water from the well without filing a permit application to increase or extend the water supply from the well as required by section 37–90–137(1).

After an adjudicatory hearing, a hearing officer issued an initial decision limiting use of the replacement well to irrigation of the Southwest Quarter of Section 3. The hearing officer found that, at the time of appropriation, Well No. 1 was used only to irrigate the Southwest Quarter of Section 3. The hearing officer additionally found that beginning in 1966, the use was expanded to include irrigation of both the Southwest and Northwest Quarters and that, at the time the application for Well No. 1 was filed and the decree issued, use was being made on both parcels. However, the hearing officer held that the operative date for purposes of determining the land on which well water could be used was 1946—the date of appropriation. Therefore, the hearing officer concluded that the State Engineer's issuance of the replacement well permit for irrigation on the Northwest and Southwest Quarters represented the allowance of an expansion of use that the State Engineer did not have jurisdiction to grant in the absence of a water court decree. The State Engineer affirmed the hearing officer's decision, and V Bar appealed the decision to the water court.

The water court affirmed the State Engineer, holding that, although V Bar was irrigating the Northwest Quarter with water from Well No. 1 at the time of application, the operative date for purposes of determining the acreage on which the water could be applied was 1946—the appropriation date granted by the decree. The water court also rejected V Bar's arguments that the State Engineer did not have jurisdiction to entertain Gallegos's petition seeking revocation of the replacement well permit and that the State Engineer should be equitably estopped from revoking the replacement well permit. V Bar raises the same issues on appeal. For the reasons discussed below, we affirm the order of the water court.

### III. Analysis

#### A. Jurisdiction

Initially, we commence with a discussion of the State Engineer's jurisdiction to consider

---

1. The hearing officer noted it was "typical of decrees entered by the [Division 3 water court] during this time" not to indicate the acreage to which well water was to be applied.

petitions to revoke or modify previously-issued well permits and the proper procedure to follow when appealing a permitting decision of the State Engineer. V Bar argues the State Engineer is without authority to entertain revocation or modification petitions under the Colorado Administrative Procedures Act ("APA"), §§ 24–4–101 to –108, C.R.S. (2009), because such proceedings are "water matters" within the exclusive jurisdiction of the water courts. We conclude that, while petitions to revoke or modify well permits do constitute "water matters," the State Engineer is empowered to rule on such issues under the APA and certain provisions of the Water Rights Determination and Adjudication Act of 1969 ("1969 Act"), §§ 37–92–101 to –602, C.R.S. (2009). Because such proceedings present "water matters," under the APA and the 1969 Act, appeal of the State Engineer's decision on revocation or modification was properly appealed to the water court and then directly to us. We begin by outlining the relevant provisions of the APA and the 1969 Act and discussing the relationship between the two.

■ The APA is applicable to every agency of the state having statewide territorial jurisdiction. § 24–4–107. The APA applies to the State Engineer as that office meets the statutory definition of "state agency." *See id.* Generally, the APA serves as a "gap-filler, and its provisions apply to agency actions unless they conflict with a specific provision of the agency's statute or another statutory provision preempts the provisions of the APA." *Well Augmentation Subdist. of Cent. Colo. Water Conservancy Dist. v. City of Aurora,* 221 P.3d 399, 417 (Colo.2009). Therefore, if the APA is applicable to a particular agency, both the APA and statutes specific to that agency should be read together and harmonized to the extent possible; however, if a provision of the APA and the agency's statute conflict, the agency-specific provision controls. *See* § 24–4–107 ("[W]here there is a conflict between this article and a specific statutory provision relating to a specific agency, such specific statutory provision shall control as to such agency."). Pursuant to the APA, an agency may revoke a previously-issued license by complying with the requirements of section 24–4–104.

The 1969 Act created the current system of water divisions and water courts, with water courts having exclusive jurisdiction over all "water matters." § 37–92–201, –203; *Ft. Lyon Canal Co. v. Catlin Canal Co.,* 642 P.2d 501, 506 (Colo.1982). Section 37–92–203 sets forth the jurisdiction of the water courts and provides that water courts, "collectively acting through the water judge, have exclusive jurisdiction of water matters within the division, and no judge other than the one designated as a water judge shall act with respect to water matters in that division."

■ While V Bar concedes that the well permit is a "license" within the meaning of the APA,[2] it argues that section 24–4–104—the APA section governing license modification and revocation—is inconsistent with section 37–92–203 because, under that section, water courts have exclusive jurisdiction over all "water matters." Therefore, V Bar argues the State Engineer does not have authority to revoke or modify well licenses under section 24–4–104(5) because such proceedings may only be conducted by water courts. We disagree and find that the State Engineer is statutorily authorized to address certain "water matters," including well permitting decisions. Because we find that the statutory scheme regarding well permitting is consistent with the provisions of the APA providing for state agency revocation of licenses, we read the statutory provisions as harmonious and hold that the State Engineer's authority over well permitting allows that office to revoke or modify previously-issued well permits under section 24–4–104(5) of the APA.

■ The 1969 Act does not define the term "water matter." However, this court previously addressed the issue and held that "water matters" involve determinations regarding "the right to use water, the quantification of a water right, and changes in a previously decreed water right." *In re Ton-*

---

2. Section 24–4–102(7) defines a "license" as including "the whole or any part of any agency permit, certificate, registration, charter, membership, or statutory exemption."

*ko,* 154 P.3d 397, 404 (Colo.2007). In contrast, disputes regarding the ownership of a water right are not "water matters" within the exclusive jurisdiction of the water courts. *Crystal Lakes Water & Sewer Ass'n v. Backlund,* 908 P.2d 534, 540 (Colo.1996). The present dispute involves whether the decree adjudicating Well No. 1 limited use of water from that well to uses contemplated at the time it was drilled and whether the replacement well permit must be modified accordingly. It therefore involves the quantification of a water right and the extent to which that right may be used. Consequently, this case involves a "water matter."

While it is generally true that all disputes involving "water matters" are within the exclusive jurisdiction of the water court, the General Assembly has specifically delegated authority over certain "water matters" to the State Engineer. The 1969 Act integrated the administration of groundwater and surface water rights and vested the State Engineer with administrative authority over the distribution of the surface and groundwaters of the state. *In re Rules & Regulations Governing the Use, Control, & Protection of Water Rights for Both Surface & Underground Water Located in the Rio Grande & Conejos River Basins & Their Tributaries,* 674 P.2d 914, 934 (Colo.1983); *see also* § 37–80–102, C.R.S. (2009). Broadly, the State Engineer is the "executive officer in charge of supervising the work of all division engineers," § 37–80–102(1), has the responsibility of discharging the obligations of the State of Colorado imposed by compact or judicial order, *id.* § –102(1)(a), and is "invested with a general supervisory control over the public waters of the state," *Chew v. Bd. of Comm'rs.,* 18 Colo.App. 162, 70 P. 764, 765 (1902). In the arena of groundwater, the State Engineer is specifically authorized to issue well permits if he or she finds "that there is unappropriated water available for withdrawal by the proposed well and that the vested water rights of others will not be materially injured." § 37–90–137(2)(b)(I)(A), C.R.S. (2009).

The overall management of the state's water resources, including issuance of well permits and distribution of water in accordance with court-issued decrees, certainly constitutes involvement with issues related to "the right to use water and the quantification of [ ] water right[s]." *See In re Tonko,* 154 P.3d at 404. Accordingly, there can be no doubt that the actions enumerated above involve "water matters" as this court has previously defined that term. And, although section 37–92–203 states that the water courts have exclusive jurisdiction over "water matters," the General Assembly has nonetheless chosen to delegate certain administrative actions involving "water matters" to the State Engineer. Therefore, contrary to V Bar's argument, the State Engineer may address issues involving "water matters" when such authority is specifically delegated to that office.

The State Engineer is required to regulate the distribution of water, which includes the distribution of water through well permits, in accordance with the decrees entered by the water courts. § 37–92–304(8) ("Promptly after receiving a judgment and decree, the division engineer and the state engineer shall enter in their records the determinations therein made as to priority, location, and use of the water rights and conditional water rights, and they shall regulate the distribution of water accordingly."). Additionally, the duties of the State Engineer include conducting "investigations ... related to carrying out the functions of the division of water resources, including well licensing." § 37–80–102(f). Inherent in the State Engineer's authority to issue a well permit is the authority to revoke or modify a permit when the State Engineer's investigation shows that a revocation or modification is required by law. Section 37–80–102(f) does not limit the State Engineer's authority over well permitting to the issuance of permits as argued by V Bar. Rather, this duty is broad enough to include the duty to investigate whether a well permit was improperly issued and should be revoked or modified. However, while the State Engineer's authority over well permitting decisions is clear from the 1969 Act, nothing in the 1969 Act specifically addresses revocation proceedings. Instead, because the statutes specific to the State Engineer are silent as to revocation proceedings, the APA, fulfilling its gap-filling func-

tion, provides the framework for revocation and modification of previously-issued well permits. Under section 24–4–104(5), an agency may initiate a proceeding for the revocation, suspension, annulment, limitation or modification of a previously-issued license upon its own motion or by the filing of a written complaint.

Here, George Gallegos filed a written complaint with the State Engineer, and the State Engineer initiated a proceeding regarding that complaint as set forth in section 24–4–104(5). The State Engineer complied with the requirements of section 24–4–104 regarding license revocation and modification,[3] and the hearing officer determined that modification of the replacement well permit was required by law because the replacement well permit unlawfully granted an enlargement of the water right decreed to Well No. 1 under a 1946 priority date. *See id.* § –104(2) ("Every agency decision respecting the grant, renewal, denial, revocation, suspension, annulment, limitation, or modification of a license shall be based solely upon the stated criteria, terms, and purposes of the statute, or regulations promulgated thereunder, and case law interpreting such statutes and regulations pursuant to which the license is issued or required."). Accordingly, the hearing officer and the State Engineer had the authority to modify the replacement well permit under section 24–4–104.

■ After the State Engineer affirmed the hearing officer's findings of fact and conclusions of law, V Bar appealed the decision to the water court. George Gallegos challenged the water court's jurisdiction to hear the appeal, arguing that the appeal should have been brought in the Denver District Court pursuant to the APA. The water court disagreed and held that the case primarily involved a "water matter," water courts have exclusive jurisdiction over "water matters," and appellate jurisdiction of the State Engineer's decision was therefore proper in the water court rather than in the district court.

The issue of the water court's jurisdiction was not raised before this court on appeal. Nonetheless, the basis of our jurisdiction here is that this is a "water matter" decided by the water court. As discussed above, when there is a conflict between the APA and a specific statutory provision relating to a specific agency, the agency-specific provision controls. § 24–4–107. Because water courts have exclusive jurisdiction over "water matters" under section 37–92–203, section 37–92–203 conflicts with section 24–4–106(4) of the APA, which provides for judicial review of agency decisions in the district court. After V Bar appealed the State Engineer's decision regarding revocation of a previously-issued well permit to the water court, the decision of the water court on a "water matter" was properly appealed to us.

## B. Place of Use

In 1946, when Well No. 1 was drilled, V Bar irrigated only the Southwest Quarter of Section 3 with well water. V Bar did not begin irrigating the Northwest Quarter until 1966, when it acquired the parcel from the state. However, the 1975 decree adjudicating Well No. 1 was silent as to the location of use. Consequently, because of the silence of the decree, we must determine whether the scope of the water right at issue is defined by the beneficial use made of the water at the time of appropriation or the beneficial use being made of the water at the time of adjudication.

---

**3.** In addition to arguing the State Engineer lacks jurisdiction to entertain well permit revocation petitions, V Bar argues the State Engineer did not comply with section 24–4–104(3) of the APA which requires that, prior to a license revocation, the applicable agency must provide the licensee with "notice in writing of facts or conduct that may warrant such action and [give] the licensee a reasonable opportunity to comply with all lawful requirements." However, here, the record shows that the hearing officer served a copy of Gallegos's petition on V Bar and V Bar both had the opportunity to and actively participated in

the hearing conducted pursuant to the revocation petition. V Bar does not articulate an argument regarding the way in which the State Engineer failed to comply with the requirements of section 24–4–104(3); rather, it simply makes the broad assertion that the requirements of the statute were not complied with. Therefore, because the record indicates that V Bar was given written notice of the petition and had the opportunity to cure the problem and participate in a hearing, we hold that the water court did not err in finding that the State Engineer complied with section 24–4–104(3).

■ V Bar argues the operative date for purposes of determining the land on which the water right may be used is the date of adjudication, not the date of appropriation. Accordingly, V Bar argues that water from Well No. 1 can be used to irrigate both the Southwest and Northwest Quarters of Section 3 because, at the time of adjudication, both Quarters were being irrigated with well water. We disagree. V Bar's position disregards the significance of the beneficial use contemplated at the time of the 1946 appropriation and embraces the erroneous view that a lawful decree can be premised upon an unlawful expansion of use. Because we determine that the scope of a water right is defined by the intent of the appropriator at the time of appropriation, we hold that the application of water from Well No. 1 to the Northwest Quarter of Section 3 represented an unlawful expansion of use and the replacement well permit should have been limited to irrigation of the Southwest Quarter.

■ The Colorado Constitution guarantees the right of the people to divert and beneficially use the unappropriated waters of the state. Colo. Const. art. XVI § 6. A water right is created through the appropriation of water. "Appropriation" is defined as "the application of a specified portion of the waters of the state to a beneficial use pursuant to the procedures prescribed by law." § 37–92–103(3)(a). "Appropriation" consists of an actual diversion of water with the intent to apply it to a beneficial use and application of that water to a beneficial use. Colo. River Water Conservation Dist. v. Rocky Mountain Power Co., 158 Colo. 331, 335, 406 P.2d 798, 800 (1965).

■ Water courts do not create water rights; rather, water rights are created by appropriation. High Plains A & M, LLC v. Se. Water Conservancy Dist., 120 P.3d 710, 718 (Colo.2005). However, a water right owner is not entitled to have his or her water right administered within the priority system until he or she obtains a judicial decree confirming the water right. See Purgatoire River Water Conservancy Dist. v. Witte, 859 P.2d 825, 835 (Colo.1993). Every judicial decree is given an appropriation date, and water rights are administered in priority of

appropriation. Coffin v. Left Hand Ditch Co., 6 Colo. 443, 447 (1882). Prior to 1965, Colorado did not require a judicial decree for appropriation of groundwater. However, that year, the General Assembly passed the Groundwater Management Act of 1965 ("1965 Act"), §§ 37–90–101 to –143, C.R.S. (2009), which affirmed the applicability of the prior appropriation system to tributary groundwater and directed the State Engineer to administer the distribution of tributary groundwater in accordance with the priority system. Under the 1965 Act, a party wishing to drill a new well or expand or increase the use of an existing well must receive a permit from the State Engineer. § 37–90–137(1) ("[O]n or after May 17, 1965, no new wells shall be constructed outside the boundaries of a designated groundwater basin nor the supply of water from existing wells outside the boundaries of a designated groundwater basin increased or extended, unless the user makes an application in writing to the state engineer for a permit to construct a well.").

Four years after enactment of the 1965 Act, with passage of the 1969 Act, the General Assembly made clear that, in order to be entitled to in-priority administration of tributary wells predating 1965, owners of such wells must receive a judicial decree confirming that right. § 37–92–306. As an incentive for well owners to adjudicate their wells, the 1969 Act provided that water court applications to adjudicate wells filed before July 1, 1972 would be given a priority date relating back to the original appropriation date rather than a priority date assigned as of the date the application was filed. Id.

■ In Colorado, appropriations of water for irrigation are made by and for use on specific land. In re Water Rights of Cent. Colo. Water Conservancy Dist., 147 P.3d 9, 14 (Colo.2006). Water which was appropriated for use on one parcel of land cannot be applied to new or different lands without a decree issued by the water court allowing the change in use. Id. at 14. The amount of water appropriated is defined by the beneficial use to which the water is put. "Beneficial use" is defined as "that amount of water that is reasonable and appropriate under rea-

sonably efficient practices to accomplish without waste the purpose for which the appropriation is lawfully made." § 37–92–103(4). Consequently, because the amount of water that is reasonable and appropriate must be based on the purpose of the appropriation, the amount of acreage to be irrigated and the location of the irrigation must be contemplated at the time of the appropriation.

Here, V Bar satisfied the requirements for appropriation in 1946 when it constructed Well No. 1 and applied its waters to beneficial use through irrigation of the Southwest Quarter of Section 3. It is undisputed that well water was appropriated for the beneficial use of irrigation of the Southwest Quarter of Section 3. The amount of water appropriated was defined by that amount of water that was "reasonable and appropriate" to "accomplish without waste" the irrigation of the Southwest Quarter of Section 3. *See* § 37–92–103(4). The fact that the water right was not confirmed by a water court decree until 1975 does not affect the outcome of the present matter because, while unconfirmed, the appropriation of water from Well No. 1 was completed in 1946. Accordingly, the appropriation of water from Well No. 1 could not have included the Northwest Quarter of Section 3 because that parcel was not acquired by V Bar until twenty years after the appropriation was complete.

V Bar requested, and the water court confirmed, an absolute water right under a 1946 appropriation, which means that the water right had been put to its intended beneficial use in 1946. Nothing in the record indicates that the water right was appropriated in anticipation of future acquisition of the Northwest Quarter. Consequently, because the water right was created upon the completion of the appropriation, the scope of that right and the lands upon which it may be exercised are defined by the beneficial use for which the water was appropriated. Therefore, the water right at issue is limited to irrigation of the Southwest Quarter, and, in order to irrigate lands beyond the Southwest Quarter, V Bar must petition the water court for a change decree recognizing a new situs for the appropriation. *See* §§ 37–92–103(5), –305(3); *Santa Fe Trail Ranches Prop. Owners Ass'n v. Simpson,* 990 P.2d 46, 53 (Colo.1999) (change of use cannot be undertaken unilaterally by water right owner).

■ V Bar argues that, because it was irrigating the Northwest Quarter with water from Well No. 1 at the time it applied to the water court for adjudication, the decree necessarily allowed for irrigation on both the Southwest and Northwest Quarters. However, irrigation of the Northwest Quarter of Section 3 with water from Well No. 1 was an expansion of use when it was undertaken in 1966. An appropriator may not enlarge an appropriation, even if the enlarged use does not go beyond the decreed amount, without establishing all of the elements of an independent appropriation, which will necessarily have a later priority date. *Santa Fe Trail Ranches Prop. Owners Ass'n,* 990 P.2d at 53.

Parties wishing to change or expand the use of a water right must obtain water court decrees allowing the change in use. § 37–92–305(3). Here, V Bar neither sought nor received a change of use decree from the water court. Additionally, no request was made in the 1972 application for adjudication for a second appropriation date for the well as of the time V Bar acquired the Northwest Quarter. Therefore, V Bar failed to distinguish the 1946 decreed appropriation from the undecreed expansion of use that occurred in 1966 when it began irrigating the Northwest Quarter. This expanded use was a new appropriation which remains unadjudicated and therefore cannot define the scope of V Bar's water right.

In addition to obtaining a water court decree allowing an expansion of use, parties wishing to expand the use of groundwaters must obtain a permit from the State Engineer approving the expansion of use. The 1965 Act provides that "on or after May 17, 1965, no new wells shall be constructed outside the boundaries of a designated groundwater basin nor the supply of water from existing wells outside the boundaries of a designated groundwater basin increased or extended, unless the user makes an application in writing to the state engineer for a permit to construct a well." § 37–90–137(1). While this provision came into effect the year

before V Bar expanded the use of Well No. 1, V Bar failed to comply with its requirements. Therefore, in addition to failing to obtain a water court decree approving the expansion of use, V Bar also failed to comply with the administrative requirement that it obtain a permit from the State Engineer approving the expansion.

 In 2005, V Bar received a replacement well permit from the State Engineer which specifically authorized irrigation on both the Northwest and Southwest Quarters of Section 3. A replacement well is a "new well that replaces an existing well and which shall be limited to the yield of the original well and shall take the priority date of the original well." § 37–90–103(13). The State Engineer has the authority to issue replacement well permits, but may not issue a permit granting an expansion of use. § 37–90–137(2). Because we determine that the 1975 adjudication limited use of water from Well No. 1 to the Southwest Quarter of Section 3, the State Engineer was without authority to grant a permit allowing irrigation of the Northwest Quarter. Accordingly, the water court did not err in affirming the State Engineer's modification of the replacement well permit to limit irrigation to the Southwest Quarter only.

## C. Estoppel

Finally, V Bar argues the State Engineer should be estopped from modifying the replacement well permit. V Bar asserts two grounds as the basis for estoppel. First, V Bar argues that when it attempted to file a well registration for Well No. 1 in 1989 or 1990 listing both the Southwest and Northwest Quarters, the Division Engineer told V Bar it was unnecessary because the well had been previously adjudicated. Second, V Bar argues that it detrimentally relied on the issuance of the original replacement well permit granting permission to irrigate both Quarters when it purchased and installed a sprinkler irrigation system on the Northwest Quarter.

 Generally, equitable estoppel arises where one party induces another to detrimentally change position in reasonable reliance on that party's actions through words, conduct, or silence. *City of Thornton v. Bijou Irr. Co.*, 926 P.2d 1, 75 (Colo.1996). In *City of Thornton* this court outlined the elements of equitable estoppel, stating:

> The essential elements of an equitable estoppel as related to the party estopped are: (1) [c]onduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) lack of knowledge and the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially ....

*Id.* at 76 (citing *Aubert v. Town of Fruita*, 192 Colo. 372, 374, 559 P.2d 232, 234 (1977)). The doctrine of equitable estoppel is only available against an agency of the state to prevent "manifest injustice" if the party seeking application of the doctrine can show that it reasonably relied on an agency action. *Bentley v. Valco, Inc.*, 741 P.2d 1266, 1269 (Colo.App.1987).

 V Bar's first ground for invocation of the doctrine of equitable estoppel—reliance on the Division Engineer's statement that well registration was not required—fails because the first element of equitable estoppel has not been met. V Bar presents no evidence showing that the Division Engineer's statement amounts to a "false representation or concealment of material facts." Additionally, even if V Bar had filed the well registration in 1989 or 1990, the outcome of the present case would not be different. The State and Division Engineers do not determine water rights; they merely administer the waters of the state in accordance with court decrees. *See Santa Fe Trail Ranches Prop. Owners Ass'n*, 990 P.2d at 52; § 37–92–304. Registration of the well therefore could not have changed the scope of the

judicially decreed water right. As discussed above, use of the water right is limited to uses contemplated in 1946. Therefore, even if the registration was filed, this would have had no impact on the water right as use of that right is limited to irrigation of the Southwest Quarter. The State and Division Engineers have no authority to alter this. Accordingly, the failure to file the well registration is immaterial to the present matter and cannot stand as the basis for an assertion of equitable estoppel.

■ V Bar's second ground for application of the doctrine of equitable estoppel—its detrimental reliance on the State Engineer's original issuance of the replacement well permit—fails for similar reasons. The State Engineer has no authority to grant new water rights or expand existing water rights; rather, such authority is within the exclusive jurisdiction of the water courts. *Santa Fe Trail Ranches Prop. Owners Ass'n,* 990 P.2d at 52 ("[O]ur state legislature and courts ... have never accepted the proposition that water officials may determine the water rights of citizens; this is a judicial function under the adjudication statutes."). Well permits, issued by the State Engineer, are for administrative regulation only and do not define water rights. *Id.* Here, V Bar's judicial decree limits use of water from Well No. 1 to uses contemplated in 1946. The State Engineer's original approval of the replacement well permit could not grant V Bar the right to expand its 1946 appropriation; only the water court can approve such an expansion. Accordingly, equitable estoppel cannot be asserted, based on an initial administrative decision, in contravention of the statutory mandate that the State Engineer regulate the distribution of water in accordance with court decrees.

We therefore find the doctrine of equitable estoppel inapplicable to the present case.

## IV. Conclusion

For the foregoing reasons, we affirm the decision of the water court.