2014 CO 81

Concerning the Application for Water Rights of Widefield Water and Sanitation District and the City of Fountain in Custer County.

WIDEFIELD WATER AND SANITATION DISTRICT and City of Fountain, Applicants–Appellants

v.

Steven J. WITTE, in his official capacity as Division Engineer for Water Division 2; Dick Wolfe, in his official capacity as State Engineer; Pueblo West Metropolitan District; Round Mountain Water and Sanitation District; Custer County Investments, LLC; Ute Springs Ranch, LLC; Southeastern Colorado Water Conservancy District; Peter Lopresti; Catherine Lopresti; Board of Water Works of Pueblo, Colorado; Wet Mountain Valley Water Association; John W. Brandenburg; Radonna B. Brandenburg; John W. Brandenburg Living Trust; Radonna B. Brandenburg Living Trust; Charles E. Schneider; Lee Roy Family Trust; D & V Koch Ranch, LLC; Mike Smith; City of Aurora; Board of County Commissioners of Custer County, Colorado; and Penrose Water District, Opposers–Appellees

Supreme Court Case No. 13SA197

Supreme Court of Colorado.

December 22, 2014

Attorneys for Applicant–Appellant Widefield Water and Sanitation District: White & Jankowski, LLP, Sarah A. Klahn, Denver, Colorado

Attorneys for Applicant–Appellant City of Fountain: Alperstein & Covell, P.C., Cynthia F. Covell, Andrea L. Benson, Denver, Colorado

Attorneys for Opposers–Appellees Steven J. Witte and Dick Wolfe: John W. Suthers, Attorney General, Paul L. Benington, First Assistant Attorney General, Thomas N. George, Assistant Attorney General, Denver, Colorado

Attorneys for Opposers–Appellees Pueblo West Metropolitan District and Round Mountain Water and Sanitation District: Krassa & Miller, LLC, Robert F.T. Krassa, Robin A. Byers, Boulder, Colorado

Attorneys for Amicus Curiae Blue River Valley Ranch Lakes Association: Carlson, Hammond & Paddock, LLC, Mary Mead Hammond, Mason H. Brown, Denver, Colorado

Attorneys for Amicus Curiae The Cache La Poudre Water Users Association: Fischer, Brown, Bartlett & Gunn, P.C., Donald E. Frick, Daniel K. Brown, Sara J.L. Irby, Fort Collins, Colorado

Attorneys for Amicus Curiae The City of Northglenn: Fischer, Brown, Bartlett & Gunn, P.C., Donald E. Frick, Daniel K. Brown, Sara J.L. Irby, Fort Collins, Colorado

No appearance on behalf of: Custer County Investments, LLC; Ute Springs Ranch, LLC; Southeastern Colorado Water Conservancy District; Peter Lopresti; Catherine Lopresti; Board of Water Works of Pueblo, Colorado; Wet Mountain Valley Water Association; John W. Brandenburg; Radonna B. Brandenburg; John W. Brandenburg Living Trust; Radonna B. Brandenburg Living Trust; Charles E. Schneider; Lee Roy Family Trust; D & V Koch Ranch, LLC; Mike Smith; City of Aurora; Board of County Commissioners of Custer County, Colorado; and Penrose Water District.

CHIEF JUSTICE RICE delivered the Opinion of the Court.

¶ 1 In this interlocutory appeal from the water court, the applicants seek to change the use of an absolute water right. The relevant decree for that right expressly identifies the precise acres to be irrigated. To ensure that their proposed change would not result in an unlawful expansion of use, the applicants conducted a historical consumptive use ("HCU") analysis to determine the amount of water previously used in accordance with the decreed right. But they performed this analysis on acreage not contemplated by the original appropriation, nor by any subsequent decree. The water court rejected this analysis as improper. We therefore must determine whether, when a decree delineates specific acreage to be irrigated, an applicant seeking to change the decreed right may conduct an HCU analysis on acreage beyond that lawfully associated with the relevant water right.

¶ 2 We hold that this is impermissible and that an applicant may only conduct an HCU analysis on acreage lawfully irrigated in accordance with the expressly decreed appropriation. Accordingly, we affirm the judgment of the water court and remand the case to that court for proceedings consistent with this opinion.

## I. Facts and Procedural History

¶ 3 The Subject Water Rights at issue here involve three ditches—termed the "Bell Ditches"—that divert water onto a parcel of land called the H2O Ranch ("the Ranch"). In

1893, the Freemont County District Court entered an interlocutory decree establishing absolute water rights pertaining to the Bell Ditches; the court subsequently finalized this decree on March 12, 1896 ("the Original Decree"). That decree provided for water from the Bell Ditches to irrigate certain lands outside of the Town of Westcliffe, including the Ranch. Specifically, the Original Decree provided for each ditch to divert a particular quantity of water to a particular acreage, as follows:

- Bell Ditch No. 1 was decreed to irrigate 280 acres at 3.71 cfs. Of these 280 acres, 140 lie on the Ranch.
- Bell Ditch No. 2 was decreed to irrigate 50 acres at 3.38 cfs. All of these 50 acres lie on the Ranch.
- Priority No. 114 of Bell Ditch No. 3 was decreed to irrigate 360 acres at 8.608 cfs. Of these 360 acres, 160 lie on the Ranch.[1]

Therefore, taken together, the Original Decree provided for irrigation of *350* acres that lie on the Ranch; we shall refer to these 350 acres as "the Original Acres."

¶ 4 Nearly eighty years later, in 1975, a developer named Conquistador Inc. filed a change application in Case No. W–4321, seeking to change the Subject Water Rights from irrigation use to use for augmentation for the purpose of building a ski resort. In 1977, the water court entered a decree conditionally approving Conquistador's change application ("the 1977 Decree"). By its terms, this decree stated that it "shall not be of any force or effect unless and until" specific conditions were satisfied. Relying in part on an HCU analysis performed by Conquistador's expert, the decree also determined that the three Bell Ditches had historically combined to irrigate *462* acres on the Ranch; we shall refer to these 462 acres as "the Enlarged Acres."[2]

¶ 5 Conquistador's planned ski resort never came to fruition. As a result, the develop-

er sold its interest in the Ranch and the Subject Water Rights, both of which eventually passed to Mountain Cliffe Inc. In 1995, Mountain Cliffe filed a new change application in Case No. 95CW09, seeking to return the Subject Water Rights to irrigation use on "the lands they were historically used to irrigate" prior to the 1977 Decree. In 1996, the water court issued an order titled "Decree Approving Change of Water Rights and Vacating Decree in Case No. W–4321" ("the 1996 Decree"). In that order, the water court found that "an insufficient number of [the 1977 Decree's] conditions have been satisfied for the plan to have been of any force or effect," and it thus declared that the 1977 Decree "is hereby vacated." It further decreed that Mountain Cliffe's interests in the Subject Water Rights "are hereby changed so that they may be used only for purposes of irrigation on the lands upon which water diverted in their exercise was historically used prior to the entry of [the 1977 Decree]."

¶ 6 In 2007, the applicants in the present case, Widefield Water and Sanitation District and the City of Fountain ("Applicants"), acquired the Ranch, as well as a portion of the water rights recognized in the Original Decree. Specifically, Applicants gained ownership of the following Subject Water Rights:

- 2.56 cfs of the 3.71 cfs originally decreed from Bell Ditch No. 1.
- 2.61 cfs of the 3.38 cfs originally decreed from Bell Ditch No. 2.
- 6.3825 cfs of the 8.608 cfs originally decreed from Priority No. 114 of Bell Ditch No. 3.

Thereafter, Applicants filed the change case at issue here, seeking to change the Subject Water Rights from irrigation to municipal use. In support of their application, Applicants conducted an HCU analysis to confirm that their proposed change of use would not result in an unlawful expansion of the Sub-

---

1. Additionally, Priority Nos. 35 and 55 of Bell Ditch No. 3 were decreed to irrigate 90 acres— all lying on the Ranch—at 2.152 cfs. These rights are not at issue in this appeal.

2. Given the overlapping nature of the Bell Ditches, the parties dispute the exact number of historically irrigated acres as found by the 1977 De-

cree. It is undisputed, however, that the number of *Enlarged* Acres (i.e., the acres that the Bell Ditches actually irrigated according to Conquistador's HCU analysis) exceeds the number of *Original* Acres (i.e., the acres that the Bell Ditches were decreed to irrigate pursuant to the Original Decree).

ject Water Rights. But Applicants performed this HCU analysis on the 462 Enlarged Acres rather than the 350 Original Acres. The State and Division Engineers ("the Engineers") filed a motion for determination of law, arguing that Applicants' HCU analysis was faulty and should be restricted to the Original Acres as set forth in the Original Decree.

¶ 7 The water court granted the Engineers' motion. First, the water court found that the 1996 Decree "intended to vacate the [1977] Decree to restore the Subject Water Rights to their use as originally decreed." The water court further found that, to the extent that the 1996 Decree addressed historical consumptive use pertaining to the Subject Water Rights, it did so only "to confirm Mountain Cliffe's ownership of the lands where the Subject Water Rights were historically used." As a result, the water court determined that "because the [1996] Decree vacated the historic consumptive use findings of the [1977] Decree and made no new historic consumptive findings, any use under the [1996] Decree was still implicitly limited to that usage which occurred for the original appropriation." Thus, the water court concluded that "only historic consumptive use attributable to each of the Subject Water Rights, as historically used on the parcels specifically decreed to be irrigated under each water right in 1896, can be included in the historic use determination for each right."

¶ 8 Applicants subsequently filed this interlocutory appeal.[3]

## II. Standard of Review

¶ 9 We review the water court's legal conclusions, including its interpretation of prior decrees, de novo. *Burlington Ditch Reservoir & Land Co. v. Metro Wastewater*

*Reclamation Dist.*, 256 P.3d 645, 661 (Colo. 2011). In construing decrees, we deduce their meaning from the entire instrument, not from isolated parts. *Ready Mixed Concrete Co. v. Farmers Reservoir & Irrigation Co.*, 115 P.3d 638, 642 (Colo.2005).

## III. Issue Preclusion

¶ 10 As a preliminary matter, Applicants argue that principles of issue preclusion should have barred the water court from entering its own findings regarding Applicants' HCU analysis. Specifically, Applicants contend that both the 1977 Decree and the 1996 Decree made conclusive determinations regarding the historical consumptive use of the Enlarged Acres, meaning the water court was required to accept these findings. We disagree.

¶ 11 Issue preclusion operates to "promote finality and efficiency in judicial decision-making by preventing relitigation of matters already considered and decided by the courts." *Burlington Ditch*, 256 P.3d at 668. It only applies, however, if "the issue sought to be precluded is identical to an issue actually and necessarily determined in a prior proceeding." *Id.* (quoting *In re Tonko*, 154 P.3d 397, 405 (Colo.2007)). This precondition is especially pertinent in water cases, where we must be wary of "hamstring[ing] the decision-making of our water courts by inferring preclusion where issues are not identical and determinative." *Id.* at 669. Specifically, we have recognized that wielding the doctrine of issue preclusion with undue aggression "could result in injury to other appropriators resulting from a change of water rights." *Id.*

¶ 12 The issue in the present case involves the appropriate acreage upon which

---

3. Specifically, Applicants presented the following issues for review:
 1. Whether the Division 2 Water Court erred in rejecting as a matter of law [Applicants' HCU] analysis of the Subject Water Rights that relied on historically irrigated acres decreed in two separate change decrees, and instead holding as a matter of law that the HCU analysis must be based on different acres identified in the original 1896 Decree for the Subject Water Rights.

2. Whether the Water Court, by holding as a matter of law that the HCU analysis must be based on the [Original] Acres, erroneously invalidated prior Water Court confirmation of the place of use of the Subject Water Rights on the [Enlarged] Acres and the Water Court order requiring continued irrigation of that acreage.

Applicants may conduct their HCU analysis. This issue is in no way identical to any issue "actually and necessarily determined" by an existing decree. It is true that the 1977 Decree made findings regarding historical consumptive use on the Enlarged Acres. Yet that decree declared that it "shall not be of any force or effect unless and until" specific conditions were satisfied. Because Conquistador's proposed ski resort never materialized, these conditions were never met. For this reason, the water court in 1996 formally vacated the 1977 Decree.[4] Therefore, the 1977 decree never took *any* effect—it thus cannot carry preclusive effect.

¶ 13 As for the 1996 Decree, Applicants point to paragraph 8, which quoted the 1977 Decree's findings regarding the Bell Ditches and then stated that "[t]he lands historically irrigated by use of those portions of [the Bell Ditches] are shown on the attached Appendix 1." Applicants contend that this statement constitutes an affirmative finding from the 1996 water court that any subsequent HCU analysis must apply to the Enlarged Acres.

¶ 14 Applicants exaggerate this statement's significance. As we have repeatedly recognized, "Prior proceedings have a preclusive effect only if 'historical consumptive use was calculated and relied upon in the formation of the earlier decree.'" *Burlington Ditch*, 256 P.3d at 670 (quoting *Farmers High Line Canal & Reservoir Co. v. City of Golden*, 975 P.2d 189, 201 (Colo.1999)). The 1996 water court performed no such calculations regarding historical consumptive use, nor did it rely on any calculations in entering its decree. Rather, reading the 1996 Decree as a whole, it is clear that the instrument's purpose was simply to vacate the 1977 Decree and confirm Mountain Cliffe's ownership of the Subject Water Rights. Therefore, the single sentence in paragraph 8 regarding "lands historically irrigated" did not foreclose the present water court from addressing the issue of historical consumptive use.

¶ 15 Simply put, we cannot conclude that the issue of historical consumptive use of the Subject Water Rights was "actually litigated and determined" in any prior proceeding that took legal effect. *See In re Water Rights of Cent. Colo. Water Conservancy Dist.*, 147 P.3d 9, 18–19 (Colo.2006) [hereinafter *Jones Ditch*] ("[I]ssue preclusion holds that the final decision of a court on an issue *actually litigated and determined* is conclusive of that issue in any subsequent suit." (internal quotation marks omitted)). Accordingly, the doctrine of issue preclusion does not apply.

¶ 16 Having disposed of Applicants' procedural argument, we now turn to the merits of their appeal.

### IV. Analysis

¶ 17 Although the history of the Subject Water Rights in this case spans over 100 years and involves multiple prior decrees, the legal question we must answer is actually quite narrow: whether an applicant in a change proceeding may conduct an HCU analysis on acreage beyond that lawfully associated with the relevant water right. Specifically, we must choose between two sets of acreage. Applicants argue that they may base their HCU analysis on the Enlarged Acres, i.e., the 462 acres that the Bell Ditches have combined to irrigate historically as determined by the vacated 1977 Decree. The Engineers counter (and the water court agreed) that Applicants must restrict their analysis to the Original Acres, i.e., the 350 Acres on the Ranch contemplated by the Original Decree.

¶ 18 To resolve this dispute, we first examine the basic principles of Colorado water law as they pertain to HCU analysis. We then apply those principles to this case and conclude that Applicants must confine their HCU analysis to the Original Acres.

### A. Colorado Water Law and HCU Analysis

¶ 19 The touchstone of Colorado's prior appropriation law is beneficial use. As such, an appropriator of water perfects a

---

4. Indeed, if any finding from a prior decree is preclusive here, it is the factual finding in the 1996 Decree that "an insufficient number of [the 1977 Decree's] conditions have been satisfied for the plan to have been of any force or effect."

water right "only by application of a specified quantity of water to an actual beneficial use." *Burlington Ditch,* 256 P.3d at 661. The General Assembly has defined "beneficial use" as "that amount of water that is reasonable and appropriate under reasonably efficient practices to accomplish without waste the purpose for which the appropriation is lawfully made." § 37–92–103(4), C.R.S. (2014). In conformance with this overarching principle, we have recognized that "the right to change a water right is limited to that amount of water actually used beneficially pursuant to the decree *at the appropriator's place of use.*" *Santa Fe Trail Ranches Prop. Owners Ass'n v. Simpson,* 990 P.2d 46, 54 (Colo.1999) (emphasis added).

¶ 20 This focus on beneficial use in a change proceeding complements Colorado's concomitant rule of preventing injury to others with vested water rights. *See Burlington Ditch,* 256 P.3d at 674 (noting that "the key principle underlying our system of appropriation" is "no injury to other water rights"). Thus, when the owner of a water right files an application to change its use, the water court "scrutinize[s] proposed alterations to existing decreed rights that may injure other decreed water rights." *Id.* at 662. To that end, "The amount of water available for use under the changed right . . . is subject to a calculation of historical beneficial consumptive use *lawfully made under the decreed prior appropriation.*" *Id.* (emphasis added). This HCU analysis "guards against speculation and waste, ensuring optimum use and reliability in the prior appropriation system." *Id.* at 661.

¶ 21 Crucially, in practical terms, this HCU analysis does not merely measure the amount of water actually used over a representative period. Rather, a proper HCU analysis measures the amount of water actually *and lawfully* used. In a change proceeding involving, as here, a decree delineating the specific acreage to be irrigated, the amount of water lawfully used is that water used "over a representative period of time *for the appropriation made.*" *Jones Ditch,* 147 P.3d at 14 (emphasis added) (holding that although the original decree did not expressly limit consumptive use of the water

to any specific acreage, the applicant could not lawfully enlarge the associated water right beyond the amount of water necessary to irrigate the lands for which the appropriation was made). Therefore, any HCU analysis of such a decreed right may only consider water applied to acreage expressly authorized by the relevant decree, i.e., the water lawfully used for the appropriation made. *See Santa Fe,* 990 P.2d at 52 ("[A]n undecreed change of use of a water right cannot be the basis for calculating the amount of consumable water that can be decreed for change to another use.").

¶ 22 With these principles in mind, we now turn to the present case and determine the validity of Applicants' proposed HCU analysis.

**B. Application to This Case**

¶ 23 Pursuant to their change application, Applicants seek to conduct their HCU analysis on the Enlarged Acres rather than the Original Acres. As we have established, neither the Original Decree nor any subsequent decree authorized irrigation of the Enlarged Acres. Thus, Applicants seek to perform an HCU analysis on land not lawfully associated with the Subject Water Rights. Our precedent makes plain that this is impermissible.

¶ 24 In *Jones Ditch,* the applicant sought to change the use of a water right, requiring the water court "to determine the extent of the lawful historic use" of the right. 147 P.3d at 12. The applicant contended that its ownership of the water right encompassed 700 acres that had been historically irrigated; the water court ruled, however, that the water right "extended only to the 344 acres that were irrigated when the [original] Decree was entered, and that the expanded irrigation [subsequent to the entry of that decree] could not be considered part of the [water right's] lawful historic use." *Id.* We affirmed the water court's ruling, holding that "a water right decreed for irrigation purposes cannot lawfully be enlarged beyond the amount of water necessary to irrigate the lands for which the appropriation was made." *Id.* at 14.

¶ 25 The same circumstances that we addressed in *Jones Ditch* are present here. As in that case, Applicants seek to consider acreage in their HCU analysis beyond that contemplated by the original appropriation. And, as in that case, black-letter principles of Colorado water law compel our conclusion that Applicants' HCU analysis of these rights "is limited to the . . . acres originally irrigated . . . *no matter the number of acres that may have been subsequently irrigated.*" *See id.* at 16 (emphasis added); *see also V Bar Ranch LLC v. Cotten*, 233 P.3d 1200, 1208 (Colo.2010) ("Water which was appropriated for use on one parcel of land cannot be applied to new or different lands without a decree issued by the water court allowing the change in use."). Therefore, because the Original Decree (the relevant decree here) applies only to the Original Acres, Applicants must confine their HCU analysis to those acres.

¶ 26 Applicants nevertheless attempt to distinguish *Jones Ditch*, pointing out that it involved a completed HCU analysis, whereas in this case, the very validity of Applicants' HCU analysis is at issue. Essentially, Applicants present a convoluted chicken-egg argument: They insist that the water court cannot foreclose their HCU analysis on the Enlarged Acres until they actually conduct such an analysis on those acres. Framed differently, Applicants contend that the issue is not whether historical use of the Subject Water Rights has expanded *geographically* (i.e., from the Original Acres to the Enlarged Acres) but whether it has expanded *quantitatively* (i.e., involving a greater amount of water than that originally decreed). To resolve this quantitative question, Applicants argue, they should be permitted to conduct an HCU analysis of the Enlarged Acres.

¶ 27 Applicants' argument is unpersuasive. The purpose of an HCU analysis in a change proceeding is to determine the "amount of water available for use under the changed right." *Burlington Ditch*, 256 P.3d at 662. As such, the analysis measures the amount of water *lawfully* used under the existing water right. *See id.* But as our case law makes clear, irrigation of lands not contemplated by the originally decreed appropriation is unlawful absent a subsequent applicable decree. *See, e.g., id.* ("An irrigation water right cannot be lawfully enlarged for application to acreage beyond that for which the appropriation is accomplished . . . in the absence of an adjudicated priority for the enlargement."); *V Bar Ranch*, 233 P.3d at 1209 ("An appropriator may not enlarge an appropriation, *even if the enlarged use does not go beyond the decreed amount,* without establishing all of the elements of an independent appropriation. . . ." (emphasis added)). Here, no valid decree for the Subject Water Rights features the Enlarged Acres. Thus, Applicants may not include these acres in their HCU analysis.[5]

## V. Conclusion

¶ 28 In a change proceeding where the relevant decree for a water right expressly identifies the precise acres to be irrigated, we hold that an applicant may only conduct an HCU analysis on acreage lawfully irrigated in accordance with the decreed appropriation. Because no decree here authorizes irrigation of the Enlarged Acres, Applicants must restrict their HCU analysis to the Original Acres. Accordingly, we affirm the judgment of the water court and remand the case to that court for proceedings consistent with this opinion.

---

5. By the same token, we reject Applicants' contention that the expanded irrigation of the Enlarged Acres was lawful because it occurred prior to the General Assembly's adoption of the seminal 1969 Act. *See* An Act Concerning Water, and Enacting the "Water Right Determination and Administration Act of 1969," ch. 373, 1969 Colo. Sess. Laws 1200 (codified at §§ 37–92–101 to –602, C.R.S. (2014)) (implementing our current system of water courts). On numerous occasions after that Act's passage, we have deemed a pre–1969 expansion of water rights to be unlawful. *See, e.g., Jones Ditch*, 147 P.3d at 11–12 (limiting a water right to the decreed appropriation, notwithstanding its expansion from 1882 to 1920); *V Bar Ranch*, 233 P.3d at 1203–04 (same involving an expansion that occurred in 1966).